# GARNETT Y. CLARK *vs.* MARTIN MEYERDIRCK.

*Distribution of Damages Awarded for Opening Street Between Two Lot Owners.*

Upon the condemnation and opening of a street the Commissioners made an award of damages and an assessment of benefits, in one lump sum of net damages, to the person who appeared to be the owner of the bed of the street opened and of the land thereto adjacent. Prior to the confirmation of the award, this owner had conveyed a part of the bed of the street and the adjoining lot to A and another part thereof to B. The lot conveyed to A fronted on an already opened street and that conveyed to B was in the rear, having its chief frontage on the street to be opened in that proceeding. Upon an examination of the evidence, the Court ascertains the proportions of the sum so awarded to which A and B are respectively entitled, upon the principle that the division of the fund of net damages should be made between A and B in the same proportions that it should have been originally awarded to them if they had been the owners of the two lots at the time of the opening of the street. ·

*Decided November 15th, 1907.*

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*R. B. Tippett* and *Wm. S. Bansemer*, for the appellant.

*William S. Bryan, Jr.,* and *A. deR. Sappington*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from the final decree on a bill of interpleader filed by the city of Baltimore to procure a judicial apportionment, between contending claimants, of the damages awarded for a lot of ground condemned and taken in the opening of Pulaski street.

**64**  CLARK *vs.* MEYERDIRCK.

Under the Ordinance, No. 131, of June 23rd, 1891, the Commissioners for Opening Streets of Baltimore City proceeded to condemn and open Pulaski street for the distance of two blocks north from North avenue. The lot of ground of which the proceeds are in question in the present case constituted the western one-half of the bed of the street from the north side of North avenue to the centre of Myrtle, now called Walbrook avenue. It had a front of thirty-three feet ón North avenue and a depth northerly of three hundred and fifty-three feet and consisted of the lots designated as B and B2 on the following plat.

PLAINTIFF'S EXHIBIT NO. 4.
(Fd. with Bill of Complaint.)

At the time when the proceedings of the commissioners

for opening the street began the lot now in question together with all of the land lying immediately west of and adjacent to it was owned by Mrs. Eliza R. Buckler.    In the return of the commissioners she was allowed damages in bulk for the fee simple estate in the lot, comprising B and B2 on the plat, which was condemned and taken, amounting to $2,695 and she was charged with benefits, to accrue to her adjacent land from the opening of the street, amounting to......$1,396.12

leaving as net damages due her from the city ....$1,298.88

Pending the proceedings for opening the street, which were not completed and reviewed until May 6th, 1896, Mrs. Buckler parted with title to the condemned lot, and by mesne conveyances the portion of it designated B on the plat was acquired and owned by the appellee, Martin Meyerdirck, and the portion designated B2 had become the property of the late James McColgan, under whom the appellant claims.    The commissioners not having been made aware of these changes in the ownership of the condemned lot made the award of damages and the charge of benefits in gross to Mrs. Buckler. The city subsequently desiring to take possession of and pay for the condemned lot and Meyerdirck and McColgan being unable to agree upon an apportionment of the $1,298.88 damages, which they claimed under their deeds as assignees of Mrs. Buckler, the city filed the bill of interpleader against them and paid the money into Court.

Garnett Y. Clark having been duly substituted for James McColgan as plaintiff, the case proceeded to a final decree which apportioned the fund in Court, with interest earned thereon amounting in all to $1,395.46, by directing $1.45 to be paid to Clark and the remaining $1,393,94 to be paid to Meyerdirck.    From that decree Clark took the present appeal which brings up to us for review the propriety of the division of the fund made by the Court below.

We are of opinion that the division of this fund of net damages awarded to Mrs. Buckler must now be made between the appellant and the appellee as her assignees upon the same

principles and in the same proportions that it should have been originally awarded to them in the process of opening the street if at that time the appellant had owned lot B2 and the land west of it and the appellee had owned lot B and the land west of it. In that event the appellee would have been allowed as damages the then value of lot B less the benefits accruing to his adjacent land on the west from the opening of the street and the appellant would have been allowed as damages the then value of lot B2 less the benefits accruing to his adjacent land on the west from the opening of the street.

If the two lots had been precisely alike in respect to size, location and accessibility and the land adjacent to each of them had been equally benefited by the street opening a just and simple disposition of the net damages would have been effected by an equal division of them between the owners of the respective lots. But no such case is presented by the record before us. Lot B, and the land adjacent on the west, front on the principal thoroughfare of that section of the city and therefore the value of the adjacent land was not greatly increased by the mere opening of Pulaski street along its western side. The case is different with lot B2 and the land west of it which before the opening of Pulaski street were hemmed in back lots having no assured outlet on a public street. Therefore the value of B2 was in proportion to its size much less than that of B, and the land adjoining B2 was greatly benefited by the opening of the street as it was thereby rendered accessible and given a long front on a wide public street which it did not have before. From these considerations it is apparent that there must necessarily be a serious disparity between the amount of the fund in hand to be apportioned to the respective parties to this appeal. The important question to be determined by us is whether the disparity between the payments, directed by the decree to be made out of the fund to those parties, is too great.

On the return made by the commissioners of their proceeding in the opening of Pulaski street there appear the following memoranda in lead pencil in connection with the entries of

the aggregate awards of damages and benefits to Mrs. Eliza R. Buckler for the taking of lots B and B2.

Annexed to the statement of damages there appear these lead pencil entries:

"M. Meyerdirck $1650— ⎫
                              ⎬ St. Commissioners"
   M. Goldman      1045— ⎭

.$2695.

And annexed to the statement of benefits there appear these lead pencil entries:

"(St. Commissioners    Meyerdirck   352.50 ⎫
                                             ⎬ "
                       Goldman     1043.62 ⎭

Louis Beck one of the three commissioners who conducted the opening of Pulaski street is dead. James R. Brewer and Samuel F. Sharretts the other two commissioners were called as witnesses by the appellee and examined with reference to the pencil memoranda appearing on their return purporting to apportion the damages and benefits between lots B and B2 as owned by Meyerdirck and Goldman. These witnesses agreed that the memoranda did not form part of the return as made by the commissioners but were put there afterwards, Mr. Brewer saying that they were put there long subsequent to the return and after the City Register had given the thirty days notice for appeal. Both of these commissioners however testified that in making up the damages and benefits they had considered lots B and B2 separately and that the lead pencil memoranda correctly stated their conclusions in reference to those lots, but they had made a gross award for the two lots in their return because Mrs. Buckler owned both of them and also the adjoining land. They further testified that the estimates and division of damages and benefits stated in the pencil memoranda represented the conclusions to which the commissioners had come after fully informing themselves of the values of property in the neighborhood and that they (the two witnesses) still regarded them as correct. They also

testified that in reaching their conclusions the commissioners were influenced by the fact that lot B fronted on a wide avenue on which land was at that time worth three dollars a front foot and that lot B2 was a back lot with no outlet or inlet and possessed none of the advantages of lot B. For the purposes of their estimates the commissioners valued lot B at $1,650 and lot B2 at $1,045.

James S. Morrow testified on behalf of the appellant, as plaintiff below, that he had served in Baltimore City for ten years as a Commissioner for Opening Streets, and subsequently for four years in the Appeal Tax Court and two years as an Assessor and was familiar with the methods of making returns of damages and benefits for opening streets in that city and was also familiar with the location and value of the lots in question in this case. His opinion was that a fair apportionment would be to allow for lot B two-fifths of the gross award of $2,965 of damages *i. e.* $1,078 and for lot B2 the other three-fifths *i. e.* $1,617. He thought the apportionment of the benefits, as between the two lots, shown by the pencil memorandum on the commissioner's return was equitable. Upon his theory the apportionment of the net damages of $1,298.88 should be $573.38 to the owner of lot B2 and $725 to the owner of lot B.

Boston Fear, another witness who owned large tracts of land in the immediate vicinity on Pulaski street and North avenue, and was familiar with values in that locality thought that the net damages of $1,298.88 should be divided between the owners of lots B and B2 in proportion to the value of the lots. He based his conclusion upon his belief that B2 should not be regarded as having been a back lot without outlet before the opening of Pulaski street, because in 1896 before the final completion of the legal opening of that street, Herbert street, shown in dotted lines on the plat, was physically open and in use from Pulaski street west to the next street, and that Myrtle avenue was then physically open and in use from Pulaski street west for some distance. He estimated lot B as worth, at the time of the opening, from $1,100 to $1,237, but

said he could not put a value on lot B2 without Myrtle avenue and Herbert street opened.

Charles E. Spalding who had owned and dealt in real estate quite extensively in the vicinity of these lots and was familiar with the value of land in that location estimated lot B as worth $1,237.50 and lot B2 as worth $1,000, before the opening of Pulaski street but expressed no opinion as to the proper apportionment between the appellant and appellee of the net damages awarded to Mrs. Buckler.

We deem it unnecessary to notice at greater length the testimony in the case or the reasons assigned by the several witnesses for the opinions which they expressed. We have given due consideration to all of the testimony and have reached the conclusion upon the whole case that the estimate of the values of lots B and B2 and the consequent apportionment of the aggregate damages between them appearing from the evidence to have been made by the commissioners during the process of opening Pulaski street, although not embraced in their formal return but shown only by the lead pencil memoranda thereon, were fair and just. We think however the apportionment shown in the lead pencil memorandum between the two lots of the aggregate benefits allowed for the opening of Pulaski street charges too large a portion thereof to lot B2. The aggregate benefits of $1,396.12 should in our opinion be apportioned as follows: one-third thereof $465.37 for taking lot B and the remaining two-thirds $930.75 for taking lot B2. It results from what we have said that in the distribution of the $1,298.88 paid into Court the appellee Martin Meyerdirck would be entitled to receive as owner of lot B for his share of the aggregate damages allowed by the

| commissioners . . . . . . . . . . . . . . . . . . | $1,650 | |
| Less his share of the aggregate benefits | 465.37 | |
| Making his share of the net damages. | 1,184.63 | 1,184.63 |

And the appellant Garnett Y. Clark would be entitled to receive as owner of lot B2 for his share or the aggregate

| damages allowed by the commissioners | $1,045.00 | |
| Less his share of the aggregate benefits | 930.75 | |
| Making his share of the net damages.. | 114.25 | 114.25 |

$1,298.88

To the payments thus to be made to the respective parties to the record should be added *pro rata* such interest as the fund may have earned *pendente lite*, and from the payments so to be made the costs of the suit in both Courts should be deducted *pro rata*, the respective parties to receive appropriate credit for such portions of the costs in either Court as they may have already paid.

The decree appealed from will be reversed and the case remanded for further proceedings in accordance with this opinion.

> *Decree reversed and case remanded for further proceedings; the costs in this Court and Circuit Court to be paid by the parties to the appeal in the proportions in the opinion stated.*