### ACTON v. WASHINGTON TIMES CO.
### No. 5362.

District Court, D. Maryland.

Nov. 30, 1934.

Walter L. Green and Lansdale G. Sasseer, both of Hyattsville, Md., for plaintiff.

Wallace & Hammond, of Baltimore, Md., for defendant.

### WILLIAM C. COLEMAN, District Judge.

The present suit is a libel action brought by a resident of Prince George's county, Md., against the Washington Times Company, a New York corporation, the publishers of two daily newspapers, the Washington Times and the Washington Herald. The suit was originally instituted in the circuit court for Prince George's county and has been removed to this court in conformity with the removal statute; the jurisdictional prerequisites with respect to diversity of citizenship and amount involved appearing to be sufficient. The service of process was had in Prince George's county upon one A. C. Fjelstad, a newspaper reporter employed by the defendant company to report news for it in that locality. The defendant company has filed in this court a motion to quash the writ of summons on two jurisdictional grounds: First, that the company is not subject to suit in the Maryland district because not doing business here; and, second, that the reporter upon whom the service of process was had, was without authority to accept it, and that the service is, therefore, ineffectual to bind the corporation. If either one of these grounds is valid, then, of course, this court is without jurisdiction over the defendant.

The following are the material facts as developed at the hearing on the motion to quash: The Washington Times Company, defendant, has an office in New York City, as required by its charter; but its plant and general business offices are in Washington, D. C., where all branches of the business of the two papers which it publishes are conducted. It maintains no other offices, plants, or places of business, although it owns some real property in the Maryland district which, however, is not used in connection with any part of its newspaper business. It rents stores or branch stations at six different points in the Maryland district from which its newspapers are delivered to distributors, or so-called "branch managers," of which there are a dozen or more. These distributors have entire charge of the circulation of the newspapers in the Maryland district. The papers are sold to them by the company for $2 per hundred, and they remit either directly to the Washington office, or to solicitors sent into Maryland from that office. The distributors in turn sell the newspapers to individual subscribers at $2.20 per hundred. In addition to the profit thereby realized, they are paid by the company a weekly salary. The Washington Herald has an average daily circulation of 110,000, of which 14,000 is in the Maryland district; and the Times has an average daily circulation of 107,000, of which 16,000 is in the Maryland district. These distributors have entire charge of the distribution of the papers, including the employment of carriers, etc. In addition, the defendant company employs so-called "supervisors" in the Maryland district, whose duty it is to superintend the activities of the branch managers, and to stimulate, through them, circulation of the papers. Both the distributors and these supervisors are accountable directly to the company at the main office in Washington. The company displays its advertising signs on the storerooms which it rents in the Maryland district.

The basis of the present suit is an alleged libel by one of the company's reporters—not, however, the one upon whom service was had in the present proceeding—in that this reporter had forwarded to the company's office, which in turn published in the Washington Times, a malicious and defamatory libel to the effect that the plaintiff, a police officer of the town of Riverdale in the county of Prince George's, Md., had been guilty of an attempt to extort money from a certain person whom he had arrested, for which he had been dismissed by the mayor and town council. Reporter Fjelstad, like the company's other reporters, is employed on a weekly salary and is paid at the Washington office of the company. He resides in Washington and has no duties in the Maryland district other than to gather there, and to transmit to the Washington office, local news. He maintains no office of any kind in Prince George's county or elsewhere, either individually or in behalf of his company. At the time the county sheriff handed him the summons, he advised the sheriff that he had no authority to receive it. The business relationship between the company and its distributors is based upon verbal understanding and subject to cancellation at any time. These distributors, from time to time, also obtain orders for advertising which are transmitted to the home office for acceptance or rejection; but reporter Fjelstad, like the

other reporters gathering news in the Maryland district, has nothing to do with this branch of the business, nor is he authorized to perform any duties other than those of reporting news for the company.

█ In the light of the foregoing facts, we approach the first question: Was the defendant company doing business within the Maryland district? What constitutes "doing business" is a question which has been the subject of almost innumerable controversies, as evidenced by the reported cases in both federal and state courts. Since this question is vital to the jurisdiction of this court, and is not controlled by statute of the state of Maryland, we are not restricted in our consideration by state court decisions, but must ascertain the facts and decide the question for ourselves. Over a period of many years, the Supreme Court has evolved and announced, in a series of decisions, the rule to be followed. It is, of course, obviously impossible to formulate a general statement as to what acts shall be sufficient for all cases. The Supreme Court said in People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, at page 87, 38 S. Ct. 233, 235, 62 L. Ed. 587, Ann. Cas. 1918C, 537, that: "Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." Again, in Bank of America v. Whitney Cent. Nat. Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594, the court said: "The sole question for decision is whether, at the time of the service of the process, defendant was doing business within the district in such manner as to warrant the inference that it was present there." The same rule has been repeatedly affirmed. For one of the latest of these affirmances, see Consolidated Textile Corporation v. Gregory, 289 U. S. 85, 53 S. Ct. 529, 77 L. Ed. 1047.

In applying this rule to the facts in the present case it is relevant, but not conclusive, that the alleged libel was based upon the reportorial work of a reporter of the defendant company, whose duties were identical with those of Reporter Fjelstad upon whom summons in the present case was had. See LaPorte-Heinekamp Motor Co. v. Ford Motor Co. (D. C.) 24 F.(2d) 861; Frey & Son v. Cudahy Packing Co. (D. C.) 228 F. 209. It, therefore, becomes necessary to determine whether the various activities, considered as a whole, which the defendant company carried on in the Maryland district, are of such character as to warrant the inference that the company was present there. This can only be done after comprehending what are the usual, essential functions of a newspaper publishing company. They are as follows: First, the function of gathering news; second, the function of obtaining advertisers and subscribers as a source of revenue with which to edit, print, and sell in newspaper form both the news and the advertisements obtained; and, third, the actual printing and circulation of the newspapers for sale. With the manifold modern methods of rapid communication, it is doubtless possible for a newspaper to conduct all of its functions from one central office, and yet to extend the circulation of its newspapers over almost limitless areas. Nevertheless, each one of these functions is a material, integral part of the essentials of the newspaper business. Therefore, if a foreign corporation sees fit to perform any one of these functions in a given jurisdiction, it necessarily follows that such performance raises the inference that the corporation is present and doing business within that jurisdiction.

We are not unmindful of the fact that it is well settled that mere solicitation of business is insufficient to constitute doing business within the meaning of that phrase as laid down by the Supreme Court. See Green v. Chicago, Burlington & Quincy Railway Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710. See, also, International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479. And that, by this analogy, it has been held that the mere maintenance of a news gathering agency in charge of an agent, and transmitting news by leased telegraph wire, was not doing business so as to give jurisdiction by service of process upon such agent in charge. See Neely v. Philadelphia Inquirer Co., 61 App. D. C. 334, 62 F.(2d) 873; Layne v. Tribune Co., 63 App. D. C. 213, 71 F.(2d) 223. On the other hand, where service was had upon the chief correspondent in Washington of a New York newspaper corporation who had associated with him numerous assistants, where the news gathered in Washington was sent to New York for publication, and the report of such news was sold to other papers and delivery made directly in Washington, where part payment for same was received

and such receipts were used in maintaining the newspaper office in Washington, it was held, and we think rightly, that the company was doing business in Washington. Ricketts v. Sun Printing & Pub. Co., 27 App. D. C. 222. The mere gathering of news material in Maryland, and the relaying of it by the local reporter to the Washington office of his paper, may not, when considered alone, constitute doing business within the Maryland district, but, as we have just seen, the defendant company is doing much more than this in Maryland. It maintains an organization there, small though it may be, consisting of its distributors to whom it actually sells its newspapers in large quantities. For the purposes of the legal test, the details of the method by which the news material is gathered and delivered by the reporter to his superiors, how much time he spends in Maryland, or how or where he is actually paid for his services, become inconsequential. The same is true with respect to the details surrounding the work done by the distributors. The salient fact is that they are actually performing in Maryland one of the essential functions of the newspaper business. Thus, when this function is considered, as it must be, in conjunction with the reportorial function performed by the company's reporters in Maryland, we find that the company is carrying on, in Maryland, the first and the last of the three major functions of the newspaper business, namely, (1) the gathering of news material and (2) the sale of this material in readable form. If we say that the test should be whether the company maintains some business office, or editorial room within the particular district, we are immediately confronted with the undeniable fact that while such maintenance would denote the performance of not only important but necessary functions of a newspaper business as a whole, they cannot be carried on without the concurrent performance of the basic functions of obtaining news material and selling it after it is put in readable form. In short, we are not at liberty to seize upon any one branch of the business and say that the rule is or is not satisfied, depending upon the maintenance or nonmaintenance of such a branch. In each case, both the character and extent of the activities carried on must be weighed.

■■ Having thus decided that there is no merit in the contention of the defendant company that it was not doing business within the Maryland district, we have still to determine whether the service of process upon

Reporter Fjelstad was effectual to bind the corporation. This question, unlike the first one, is controlled by statute. Article 23, § 118, of the Maryland Code controls the present case. It provides as follows: "Any person or corporation, whether a resident or a non-resident of this State, may sue any foreign corporation regularly doing business or regularly exercising any of its franchises herein for any cause of action. Such suit may be brought in any county or in the city of Baltimore, as the case may be, where its principal office in this State, named in the certificate provided for by the next succeeding section of this article, is located or where it regularly transacts business or exercises its franchises, or in a local action, where the subject matter thereof lies. * * * If such corporation has a resident agent authorized and prepared to accept service as provided by section 119 of this article, such process shall be served upon him. If the corporation has no resident agent so authorized and prepared, process may be served * * * upon any president, manager, director, ticket agent or officer of the corporation, *or upon any agent or other person in its service.* * * * *"* (Italics inserted.)

The defendant company did not comply with the requirements set forth in this statute with respect to appointment of a statutory agent, and, therefore, the question is whether by service upon a reporter, the requirement of the alternate provision of the statute that "process may be served * * * upon any agent or other person in its service" has been met. In determining this question, we are controlled by the construction which the Maryland Court of Appeals may have placed upon the language of the statute. That court, in State of Maryland v. Pennsylvania Steel Co., 123 Md. 212, 91 A. 136, interpreted the same statutory provision here involved and upheld the service of summons which was had upon the treasurer of a corporation which acted as the general agent of the defendant steel company. In so deciding, the court found that it was proper to infer, from the character of the agency as shown by the established facts, that the corporation which was acting as agent of the defendant corporation in the state of Maryland "had at least the implied authority to receive service of process." Page 223 of 123 Md., 91 A. 136, 140.

In the earlier case of Central of Georgia Railway Co. v. Eichberg, 107 Md. 363, 68 A. 690, 14 L. R. A. (N. S.) 389, which the court referred to but differentiated in the

Pennsylvania Steel Company Case, supra, service had upon a freight solicitor for a railroad company was held to be sufficient. In this case, an earlier provision of the Maryland law (Code 1904, art. 23, § 411) was involved, which provided that process in suits against foreign corporations might be served, as required in another section of the Code, " * * * upon any agent of such corporation." There, the court said (pages 372, 373 of 107 Md., 68 A. 690, 694) that "the general principle, apart from statutory provision in regard to all corporations, is that process is sufficient if served upon some person upon whom it may fairly be presumed the duty devolves by virtue of his official position, or of his employment, to communicate the fact of service to the governing power of the corporation. Service on such a person is service on the corporation. * * *" Continuing, the court said: " * * * may it not fairly be presumed from the character of his [Mortimer's, the freight solicitor's] employment, without any violation of the principles of natural justice, that he would communicate the fact of the service of summons upon him to the governing power of the foreign corporation which he represented here? If so, we think Mortimer was such an agent of the appellant as is contemplated by our statute."

We are not prepared to assume that the language above quoted from the Eichberg Case is to be taken as requiring its literal application to every state of facts. For example, if strictly followed it could be said that service upon a messenger to the president or other officials of a corporation, or upon the personal secretaries of such officials, would satisfy the statutory requirement because such persons would be among those most likely to communicate to their superiors the fact of the service of summons, and indeed the duty to do so would devolve upon them by reason of their employment. Yet it is obvious that service on such persons who perform no official duties on behalf of the corporation cannot be considered as service upon the corporation. Furthermore, it is to be noted that in the Pennsylvania Steel Company Case, supra, the court uses language which is better calculated to clarify the principle to be followed; that is, the court declared the test to be whether the person served under the circumstances of the particular case may reasonably be considered as having "the implied authority to receive service of process."

Applying this test to the facts in the present case, we believe that it may not properly be inferred that the reporter upon whom the service was made had such implied authority. The undisputed facts with respect to his employment are that he was paid a weekly salary; that he would first report to the company's Washington office, and from there make telephone calls in his own discretion to various places in the Maryland district from which he hoped to obtain material for news; that he would then proceed into the Maryland district for the purpose of obtaining such news material and, if any were obtained, would return to his company's office in Washington and divulge it to his superior. It thus appears that this reporter worked rather as a "free lance" and that he cannot be said to have borne any such position of responsibility to his company as did those who were served in the cases to which we have referred. In the Ricketts Case, supra, the one served was in one sense a reporter, but had very much broader duties. The court found, as previously explained, that the foreign corporation was doing business in the District of Columbia at the time of the service of the summons, and that since the local correspondent there was the person who was in fact conducting the corporation's business in the District, this was sufficient since the statute of the District authorized the service of process upon the agent of the corporation, or the "person conducting its business" there.

We find no other decisions of the Maryland Court of Appeals which cast any additional light upon the precise question here presented. It will be seen that the words of the Maryland statute, "any agent or other person in its [the corporation's] service," are not to be taken literally. Every agent or other person must be shown to have had implied authority to receive the summons. In deciding, as we now do, that reporter Fjelstad did not possess this implied authority, we do not mean to be understood as laying down a general rule applicable to all reporters. Each case must be determined upon its particular facts. Some newspaper reporters, just as some newspaper editors, may well come within the meaning of the Maryland statute, by virtue of the extent and characteristics of their authority and duties.

We believe that the conclusion here reached is entirely consistent with the general principle announced by the Supreme Court. See Connecticut Mutual Life Insurance Co. v. Spratley, 172 U. S. 602, where it was held, page 610, 19 S. Ct. 308, 311, 43 L. Ed. 569, that: "The service of proc-

ess must be upon some agent so far representing the corporation in the state that he may properly be held in law an agent to receive such process in behalf of the corporation." See, also, Boultbee v. International Paper Co. (C. C. A.) 229 F. 951.

For the above reasons, the motion to quash the writ of summons must be granted.