## MERRIMON v. MARTINDALE-HUBBELL, Inc.

### Civ. No. 385.

District Court, E. D. South Carolina.
Dec. 28, 1940.

L. D. Jennings and Raymon Schwartz, both of Sumter, S. C., for plaintiff.

Benet, Shand & McGowan, of Columbia, S. C., for defendant.

LUMPKIN, District Judge.

Plaintiff in the above case, a resident of Sumter County, South Carolina, instituted libel action against the defendant, Martindale-Hubbell, Inc., a corporation organized and existing under the laws of the State of New York, in the South Carolina State Court, by delivery of summons to M. S. Robertson, Jr., a traveling solicitor of the defendant.

In due time defendant filed its petition and bond for removal in the United States District Court, and the case was removed to this Court.

By special appearance defendant moved to dismiss or set aside the service of process on the grounds:

"(a) That defendant is a corporation organized and existing under the laws of the State of New York, has been at no time prior to the date hereof, nor is now engaged in doing business within the contemplation of law within the State of South Carolina, and was not and is not subject to service of process within the Eastern District or elsewhere in said State."

"(b) That there has been no proper service of process in this action on defendant in that there has been no service of summons upon an officer or agent of the said defendant within the contemplation of law."

Testimony on the part of both parties to the action was presented in the form of affidavits.

From the record before me it appears, and I so hold, that Martindale-Hubbell, Inc., a New York corporation, is engaged in the business of publishing the "Martindale-Hubbell Law Directory", which is a directory of the lawyers of the United States and the Domain of Canada. It also contains a list of foreign lawyers, a Digest of Laws and Court Calendars.

Defendant has only one office and place of business, which is located in the City of New York. It is there that all data used in the Directory is collected, compiled, edited and printed. It has no local agents or representatives who are residents of South Carolina. It owns no property in that State, nor has it ever been licensed or applied for a license to do business in said State.

In addition to publishing the names of attorneys, defendant has a system by which it rates the ability, character, and financial reliability of the members of the Bar whom it lists in its publication. A list of attorneys of each city is compiled, and through various channels of information defendant endeavors to arrive at a knowledge of the comparative standing of each attorney at the Bar. It is aided in that work by records which it has compiled and which extend back for a long number of years. This information comes from members of the Bar and other sources which defendant believes to be dependable. The ratings which appear in the Directory are in all instances made at the office of the defendant in New York and are primarily based upon written reports received by the defendant in New York. The information file is continually supplemented and kept up to date primarily through inquiries sent by mail from the

184

New York office to lawyers and other persons.

To sell its Directory and listing space therein defendant employs solicitors. One of such solicitors is M. S. Robertson, Jr., a resident of the City of Raleigh, North Carolina, upon whom attempted service was made. The duty of said solicitors, including M. S. Robertson, Jr., is to canvass the members of the Bar and to take orders for the Directory and listing space therein. All orders taken are transmitted to the New York office of the defendant for acceptance or rejection by it. Solicitor Robertson had no power or authority to bind the defendant by contract or otherwise; nor had he any authority to make collections or make any adjustment of accounts on behalf of defendant. It is a fact that in the course of his activities Mr. Robertson does pick up certain information regarding the lawyers in the communities canvassed by him, and there was evidence to show that he had urged the payment of a past-due account from a lawyer in Sumter, South Carolina, payment of such accounts being necessary before a new contract for the ensuing year could be entered into, or approved in New York. However, it is apparent that the obtaining of such information is incidental to the making of sales and is of assistance to him in the making of sales. The oral information obtained has very little influence, if any, on the rating given any particular lawyer.

It is well settled that to hold a foreign corporation within the jurisdiction of a State or District Court it must appear that such corporation is "doing business" within such State and District. Therefore, the first question to be determined here is whether or not the activities of defendant herein within the State of South Carolina amount to "doing business" in this State.

There is a long line of decisions, both State and Federal, on this question, and apparently there is no great conflict in the general principles announced. The difficulty arises in the application of the general principles to the facts of each particular case. In determining what constitutes "doing business" the courts have laid down no hard and fast rule, but are inclined to judge each case upon its own merits. As is pointed out in the case of People's Tobacco Company v. American Tobacco Company, 246 U.S. 79, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537, "Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

The case of Bank of America v. Whitney-Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594, holds that jurisdiction taken of foreign corporation does not rest on a fiction of constructive presence, but flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there [at the time of service of process] is established.

Two of the leading cases are Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and International Harvester Company v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479. These two cases are frequently cited, the Green case being generally relied upon by those claiming that the court has not jurisdiction over the foreign corporation, and the International Harvester Company case being generally relied upon in favor of jurisdiction. However, it will be noted from an examination of these cases that the general principles announced are not in conflict. In fact, it appears that the facts in the International Harvester Company case are sufficient to support the holding of jurisdiction.

Applying these well-recognized principles to the case under consideration, I am forced to conclude that the activities of the defendant, Martindale-Hubbell, Inc., in South Carolina does not amount to "doing business" in South Carolina within the contemplation of law. It seems to me that the activities of defendant's representative, M. S. Robertson, Jr., amounts to no more than the solicitation of business in the State. It is well established that the mere solicitation of business in a State is not sufficient to subject a foreign corporation to legal jurisdiction in that State. Philadelphia & Reading Railway Company v. McKibben, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710, 711; Green v. Chicago, B. & Q. R. Co., supra.

Having concluded that defendant is not "doing business" within the proper meaning of those words, it becomes unnecessary to consider whether M. S. Robertson, Jr., is a proper agent upon whom good service might be had.

Therefore, it is ordered that the purported service of summons and complaint be and the same is hereby set aside and vacated and the case be dismissed.