**KRIGER v. MacFADDEN PUBLICATIONS, Inc.**

**Civ. No. 951.**

District Court, D. Maryland.

April 29, 1941.

Makover & Kartman and Jacob Kartman, all of Baltimore, Md., for plaintiff.

Weinberg & Green, of Baltimore, Md., and Hays, St. John, Abramson & Schulman, all of New York City, for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit for injunction and damages on account of alleged infringement by the defendant of a musical composition by the plaintiff. 17 U.S.C.A. § 25.

The defendant, which is a New York corporation, has appeared specially by counsel and has moved to quash the service of process upon it on the ground that it is not now, and was not at the time of the service, present and doing business within the State of Maryland as contemplated by the Maryland Corporation Law (Maryland Code, Article 23, Sec. 120), requiring every foreign corporation doing business within the State to have a resident agent for the service of process; and that the person upon whom service was had was not at the time, and is not now an officer or director of the defendant company, nor an agent, employee or other person either expressly or impliedly authorized to accept service of process upon the defendant, within the contemplation of the provisions of the Maryland Corporation Law (Maryland Code, Article 23, Sec. 111 (b), providing for service upon others than a resident agent. Whether this motion should be granted is the sole question now before the Court.

The facts material to the present issue may be summarized as follows. Defendant company sells and ships its magazines, including one known as Radio and Television Mirror in which occurred the publication of plaintiff's musical composition which is the subject of the present suit, to the Maryland News Company, a Maryland corporation, in Baltimore, and bills the latter and collects payment from it for such sales. The Maryland News Company resells these magazines to and receives payment from retailers and street vendors. In order to promote such sales, the defendant

company employs one Brodbeck, a resident of the State of Maryland, and it was upon him that service was had in the present case. Brodbeck is afforded by the News Company, free of charge both to himself and to the defendant, office space and telephone service listed in the name of the defendant company, in the News Company's Baltimore office. Brodbeck is paid a stated salary by the defendant company. He solicits no advertising or subscriptions for the defendant company and neither collects nor forwards any money to it. He is authorized to make no contracts for the defendant company, but is authorized to employ persons to assist him in sales promotion and at the time that service was had upon him, he was employing eleven such persons in Baltimore. The News Company and the defendant are not in any way affiliated by stock ownership or management.

In support of its motion, defendant's counsel rely upon Whitaker v. Macfadden Publications, 70 App.D.C. 165, 105 F.2d 44, a recent decision of the Court of Appeals for the District of Columbia, in which, upon a factual situation arising in the District of Columbia practically identical with that here presented, the Court affirmed an order of the lower court granting defendant's motion to quash the service. The gist of the Court's ruling is embodied in the following quotation from the opinion of Justice Edgerton (105 F.2d at page 45): "It is elementary that not all economic activity amounts to 'doing business' in this sense. In Green v. Chicago, Burlington & Quincy Railway Co., 205 U.S. 530, 27 S. Ct. 595, 51 L.Ed. 916, a railroad west of Chicago was sued in a United States court in Pennsylvania. The road maintained in Pennsylvania an office, a district freight and passenger agent, and several employees who solicited passenger and freight business. These agents did not sell tickets over defendant's lines, but they sold 'pre-paid orders' which entitled the holder to receive a ticket in Chicago. The Supreme Court said it was 'obvious that the defendant was doing' in Pennsylvania 'a considerable business of a certain kind.' Yet the Court ruled that 'The business shown in this case was in substance nothing more than that of solicitation' (205 U.S. page 533, 27 S.Ct. page 596, 51 L.Ed. 916), and that the defendant was not, in the jurisdictional sense, doing business in the state. If the Burlington was not doing business in Pennsylvania, by stronger reason Macfadden is not

doing business here. The local agents of the Burlington solicited persons to enter into transactions with their employer, but the local agents of Macfadden do not; the transactions which Pendergast and his assistants promote are sales by the District News Company to newsboys or by newsboys to the public. The Burlington agents made contracts and received money for their employer, but the Macfadden agents do neither. The present case closely resembles People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537. There the American company sold goods to Louisiana jobbers, who sold to retailers. The company sent drummers into the state to solicit orders from retailers, to be turned over to the jobbers. These drummers made no sales, collected no money, and extended no credit. The Supreme Court held that the company was not doing business in Louisiana so as to permit service of process upon it. The Court distinguished International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, on the ground that there the agents not only solicited business but received payment."

Defendant's counsel in the present case contend that the Whitaker case not only correctly states the law applicable to the present situation, but is in conformity with the law of this Circuit as evidenced by Cannon v. Time, Inc., 115 F.2d 423, a decision of the Circuit Court of Appeals for this Circuit, rendered subsequent to the Whitaker decision.

With this contention of defendant's counsel we are disposed to agree because, although the facts in the Cannon case are distinguishable from those now before us, we believe that the decision in the Cannon case must be taken as inferentially an acceptance of the correctness of the Whitaker decision.

Briefly stated, the facts in the Cannon case were these. The American News Company furnished the defendant, Time, Inc., with a list of its branches throughout the country, to which it desired to have copies of Time and Life delivered. Time, Inc., thereupon arranged for the shipment of copies to branches of the American News Company, which was billed directly for same and payment was made weekly. Among the branches of the American News Company was the Richmond News Company, Richmond, Virginia. It received

subscriptions for Time and Life, and money collected on account of same was deposited in a Richmond bank to its own account and credited to its parent company, the American News Company which subsequently billed the Richmond News Company for the amount. Service of process was made upon the manager of the Richmond News Company. It is to be noted that unlike the present case, the defendant, Time, Inc., had no representative whatsoever in Virginia.

In affirming an order of the lower court, quashing the return of service of summons and dismissing the action, the Court of Appeals by Judge Parker said (115 F.2d at pages 425 and 426) : "It is conceded that the defendants were not present doing business within the state by reason of the sale of magazines at the news stands of the News Company (see Whitaker v. Macfadden Publications, 70 App.D.C. 165, 105 F.2d 44); and we do not think that presence and doing of business can be predicated of the acceptance of and collection for subscriptions upon which reliance is placed. The relationship of the News Company to these transactions was the same in both instances, i. e. that of an independent contractor. The news stands, department stores, etc., accepted and collected for subscriptions to defendant's magazines, it is true; but this was business done by the stores and news agencies for themselves, not as agents of the defendants. While defendants might under some circumstances be estopped to dispute the agency of the stores and news stands as against one placing a subscription with them, such estoppel would not prevent their showing the true situation as against a third person; and the true situation was that the stores and news stands were not the agents of defendants but were independent contractors dealing on their own account, and that, not until after the subscriptions had been obtained and forwarded to defendants and accepted by them, did a contract arise with the subscribers. So far as doing business within the state is concerned, we see no difference in principle between these transactions and those involving sale of the magazines at the news stands. If such transactions constitute a doing of business within the state, then all magazines which accept subscriptions through the so-called subscription agencies which send around traveling representatives are doing business in every state in the Union.

"Even if the News Company be considered the agent of defendants in accepting and collecting for subscriptions, it does not follow that the defendant should be held present and doing business within the state. *Mere solicitation of business by an agent does not constitute such a doing of business as to subject a foreign corporation to the local jurisdiction; and the situation is not changed by the fact that the agent may collect some money in connection with the business solicited.* [Italics inserted]. Green v. Chicago, B. & Q. R. Co., 205 U. S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Tignor v. L. G. Balfour & Co., 167 Va. 58, 187 S.E. 468; 20 C.J.S., Corporations, § 1920, pp. 166, 167. The case of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, is not to the contrary. That case disclosed a continuous course of business of large volume within the state, evidenced by solicitation of orders, delivery of goods, acceptance of checks and drafts and the discounting of these within the state. The court held that all of these things, taken together, amounted to the doing of business within the state. In a very different category, we think, is the solicitation of subscriptions to a magazine, even though the solicitor be authorized to collect for the subscriptions. The custom of magazines to offer premiums and other compensation to persons procuring paid subscriptions for them is one of long standing; and it has never been supposed that the obtaining of subscriptions in this way brought the magazines within the jurisdiction of the state any more than the obtaining of such subscriptions through the mails. If regarded as the doing of business within the state, the business is not of sufficient volume or importance to warrant the inference that the corporation itself is present within the state by its duly authorized officers or agents upon whom service of process may be had. Cf. Boardman v. S. S. McClure Co., C.C., 123 F. 614; Davega, Inc. v. Lincoln Furniture Co., 2 Cir., 29 F.2d 164; Acton v. Washington Times Co., D.C., 9 F.Supp. 74; Lauricella v. Evening News Pub. Co., D.C., 15 F. Supp. 671."

While the only reference to the Whitaker case which is contained in the quotation above is in relation to a concession by the parties in the Cannon case, we, nevertheless, feel that such reference is a

sufficient indication that the Court of Appeals for this Circuit considers the Whitaker case to have been properly decided. For this reason, taking fully into account the variation above noted between the facts in the two cases, we, nevertheless, do not feel that in view of the language and reasoning of the Cannon case the difference is sufficient to constitute a distinction as we now interpret the law of this Circuit. See to the same effect as the Cannon case Merrimon v. Martindale-Hubbell, Inc., 36 F.Supp. 182, a decision of the District Court for the Eastern District of South Carolina, decided December 28, 1940, that is, a little more than a month following the decision in the Cannon case, although the latter is not referred to or discussed. See in contrast Eastern Livestock Cooperative Marketing Ass'n v. Dickenson, 4 Cir., 107 F.2d 116; Mas v. Orange-Crush Co., 4 Cir., 99 F.2d 675, and Acton v. Washington Times Co., D.C., 9 F.Supp. 74.

There appears to be one reported decision contrary to the conclusion here reached, namely, Clements v. MacFadden Publications, Inc., 28 F.Supp. 274, 276, a decision of the District Court for the Eastern District of Texas. There, the person upon whom service was had was performing services for the defendant company virtually identical with those performed by Brodbeck in the present case, the defendant being the same company. The Court held that the contract which the defendant had with the news agency "was clearly and easily within the same general realm of the Harvester Company case" and therefore overruled the motion to quash the service. The Court said that the situation also was not distinguishable from that presented in Board of Trade v. Hammond Elevator Co., 198 U.S. 424, 25 S.Ct. 740, 49 L.Ed. 1111, and in a decision of the Third Circuit, Real Silk Hosiery Mills v. Philadelphia Knitting Mills Co., 46 F.2d 25. With respect to the Whitaker case, the Court in the Clements case had this to say (28 F.Supp. at page 276): "We have also examined the very late opinion rendered April 3, 1939 in the case of Norman T. Whitaker v. Macfadden Publications, Inc. [70 App.D.C. 165], 105 F.2d 44, by the United States Court of Appeals for the District of Columbia. The opinion does not state at any great length the facts. Seemingly they were very similar to those in the present case. Inasmuch as, in our opinion, this case is in conflict with the Hammond case and the Real Silk Hosiery Mills case, we look upon the issue as an unsettled question, and one to be determined in the light of the facts of each case. To carry the present line of holdings to any greater extent than they now exist could easily result in a publication two thousand miles away destroying a man's reputation, whether he be great or small, and requiring him to come to unfriendly territory, perhaps, to effect his vindication in the courts of justice. For this reason and for others it is manifest that the shipment and circulation of printed documents should hardly be grouped and classed with ordinary articles of merchandise." Admittedly, there is considerable persuasive force in what has just been quoted. But whatever might be our disposition were we free to consider the matter as an unsettled question in this Circuit, we feel bound, as explained, to decide as we do, by the Cannon case. Whether the defendant is to be treated, under the Maryland Law, as having impliedly authorized Brodbeck to accept service, by virtue of the fact that, as he has admitted, he did so on two previous occasions when similarly employed, which was not contested, is a question we need not decide, because unless the defendant was in legal contemplation "doing business" within the State of Maryland, it becomes immaterial.

An order will be signed in accordance with this opinion, granting the motion to quash the service and dismissing the action.