**CONSOLIDATED COSMETICS v. D-A PUB. CO., Inc., et al.**

No. 10207.

United States Court of Appeals
Seventh Circuit.

Jan. 19, 1951.

James R. McKnight, Robert C. Comstock, Chicago, Ill., for appellant.

L. B. Mann, Thomas F. McWilliams, Chicago, Ill., George E. Middleton, New York City, Mann, Brown & Hansmann, Chicago, Ill., James W. Laist, New York City, of counsel, for appellees.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, an Illinois corporation, instituted suit in the District Court, charging defendant, a New York corporation, with infringement, by the publication of its magazine, "Taboo," of plaintiff's registered trade marks of "Tabu" and "Taboo." After purported service of process, defendant moved to dismiss because of improper venue and to quash the service of process because of alleged insufficiency. The court allowed both motions, and from the resulting judgment, plaintiff prosecutes this appeal.

Both motions were decided upon affidavits submitted by the respective parties and certain exhibits attached thereto. The facts are undisputed; the only controversy here is as to their ultimate legal effect.

Defendant publishes a magazine bearing the trade mark "Taboo" and the legend that it is published bi-monthly by D-A Publishing Company, Mount Morris, Illinois and is entered as second class mail matter at Mount Morris. The magazines are printed, addressed and deposited in the mail at Mount Morris by Kable Company, under a contract with defendant whereby the latter forwards from New York and elsewhere all the material going into them, including written matter, photographs, drawings and engravings. Kable makes the necessary electrotypes from patterns furnished by the publisher. All the material supplied by defendant is sent to Kable from outside the state of Illinois and then set up for printing at Mount Morris. After defendant has read the proof, the magazines are printed and bound at Mount Morris and thereupon become the property of defendant. Some of the magazines are sent to newstands through the mails; others are addressed to individuals as subscribers.

Kable wraps, labels and delivers them to the Post Office for mailing to the separate consignees. Various materials are deposited by defendant with Kable at Mount Morris under an agreement whereby they are to remain the property of defendant, though in the possession of Kable; the latter is absolved from liability for damage to or loss of these wares.

Under 39 U.S.C.A. § 226, a publication is admitted to second class mail matter under certain conditions, one of which is that it must be issued from a known office of publication. Under Section 34.25, Postal Laws & Regulations, a known office of publication is an office where the business of the newspaper or periodical is transacted during the usual business hours and such office must be publicized by the publication itself. In accord with the statute and regulations, defendant designated Mount Morris as the public office where its business is transacted during its usual business hours. A subscription was sent from Ohio to the D-A Publishing Company at Mount Morris by registered mail. This letter was accepted by Kable Bros. Company and the subscription forwarded to the New York office and there accepted.

Upon the foregoing facts the District Court held that defendant was not doing business within the state of Illinois. Our question is whether this was the correct decision upon the facts. The Supreme Court of the United States, in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, in an authoritative opinion, considered a somewhat similar situation. After pointing out that historically the question of jurisdiction of the court to render judgment in personam has depended upon the question of whether the defendant is so present within the territorial jurisdiction of the court as to make its judgment personally binding upon him, the court added: "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Ac-cordingly our question, further narrowed, is whether the contacts of defendant here are such as to satisfy the requirements defined by the Supreme Court. Obviously, as the court said, the presence of the corporation "can be manifested only by activities carried on in its behalf by those who are authorized to act for it." As the court commented, to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state and that privilege, in turn, may give rise to obligations and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. The court added that presence in the state in this sense has never been doubted when "the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." The requirements for jurisdiction, the court said, "may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." In the later case of Travelers Health Ass'n v. Com. of Virginia, 339 U.S. 643, 70 S.Ct. 927, the court distinguished certain earlier cases and repeated the language first above quoted from the International Shoe Company case.

In other words, the rule, as the Supreme Court has defined it, seems clear that the defendant must have certain minimum contacts within the territory of the forum of such character that the maintenance of the suit does not offend traditional ideas of fair play and substantial justice. True it is, as Mr. Justice Minton says in his dissenting opinion in the Travelers case, 339 U.S. at page 658, 70 S.Ct. at page 935: "How many 'contacts' a corporation or person must have before being subjected to suit we are not informed." And likewise, true it is that Mr. Chief

Justice Stone in the International Shoe Company case said: "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." In that case, though, as the court said, the defendant maintained no stock of merchandise in the State of Washington, made no delivery of goods in interstate commerce and had no office in Washington, yet its continuous solicitations of business were "systematic and continuous throughout the years" resulting in a large volume of interstate business in the course of which defendant received the benefits and protection of the laws of the state. The court said: "It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure."

■ We think the facts of the present case are even stronger in support of jurisdiction of the non-resident corporation than they were in the International Shoe case. Here the New York corporation had made Mount Morris, Illinois, its place of publication in order to qualify with the postal department for mailing second class matter. It stored merchandise with its contractor, Kable, in Illinois, including paper and other materials to be used in printing the magazines. It sent to Kable drawings, reading matter, photographs and engravings, and employed Kable and thereby authorized it to set up the copy and to print the magazines in completed form. It contracted with and thereby authorized Kable from time to time, as the magazines were printed, to wrap them, to address them to defendant's consignees and to deposit them in the mail addressed to such consignees. These activities were not casual, isolated or disconnected but continuous and connected, in plan and series. If we are to follow the Supreme Court, we can not avoid the conclusion that such activities necessitated contacts which were such, when these magazines were published and placed in the mail at Mount Morris bearing an allegedly infringing mark, as not to exempt defendant from service of process in Illinois. We think that these activities, their extent and their continuity, their nature and their effect, were such inevitably as to constitute doing business in Illinois and, therefore, to render the defendant subject to suit in that jurisdiction.'

The functions of a magazine publishing company, obviously, include gathering material to be printed, obtaining advertisers and subscribers, printing, selling and delivering the magazines for sale. Each of these, we think, constitutes an essential factor of the magazine publication business. Consequently if a non-resident corporation sees fit to perform any one of those essential functions in a given jurisdiction, it necessarily follows that it is conducting its activities in such a manner as to be subject to jurisdiction. We think this is the inevitable conclusion from the cases cited as well as others, such as International Harvester Co. v. Com. of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, Board of Trade v. Hammond Elevator Co., 198 U.S. 424, 25 S.Ct. 740, 49 L.Ed. 1111, Acton v. Washington Times Co., D.C., 9 F.Supp. 74, Clements v. MacFadden Publs., Inc., D.C., 28 F.Supp. 274, State of Washington v. Superior Court, 1 Wash.2d 379, 96 P.2d 248, Clover Freight Lines v. Pacific Coast Ass'n, 7 Cir., 166 F.2d 626. Such a conclusion we think, is in accord with "traditional notions of fair play and substantial justice" and is not, therefore, approval of undue process.

■ Inasmuch as Kable had contracted to and was authorized to carry on activities

at Mount Morris for the benefit of defendant, we think that there can be no question but that that corporation was endowed with authority as agent for the service of process. Of course, the corporation could be served only through its officers and, therefore, service was had upon one of the officials. This, we think was sufficient within the Illinois statute, Sec. 17 of the Illinois Civil Practice Act, Ill.Rev.Stat. 1949, c. 110, § 141, governing service of process.

The judgment is reversed with directions that the court vacate the order dismissing the suit and the order quashing service of process.