## POLIZZI v. COWLES MAGAZINES, Inc.
### No. 13858.

United States Court of Appeals,
Fifth Circuit.

May 23, 1952.

Russell, Circuit Judge, dissented.

1. While they are more fully elaborated and differently emphasized by appellee, the facts, as fairly summarized in appellant's brief, are:

John D. Marsh, Miami, Fla., Tom Whitaker, Tampa, Fla., for appellant.

Arthur E. Farmer, New York City, Daniel P. S. Paul, Will M. Preston, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Filed in the Circuit Court of Dade County, Florida, against defendant, a corporation duly organized and existing under the laws of Iowa, publisher of the national weekly magazine, "Look", the suit was for libel-based on matter appearing in its issue of May 23, 1950, charging plaintiff with being a member of the Mafia, a criminal gang of great force and power.

Removed into the United States District Court for the Southern District of Florida, it was there dismissed under Sec. 1391(c), Title 28 U.S.C., for want of jurisdiction on the ground that defendant was not doing business in the district.

Appealing from that judgment, appellant, plaintiff below, is here insisting that, on the undisputed facts,[1] as shown in the deposi-

On July 10, 1950, the defendant appeared specially in the State Court to contest jurisdiction and, on July 12, 1950, filed in the District Court a peti-

tions of Briardy, the employee of defendant served, and of Whatmore, defendant's vice-president, business manager, and director, the district court was wrong in finding that the defendant, appellee here, was not doing business in the district at the time of service, and in adjudging that it did not have jurisdiction under Sec. 1391(c),

tion to remove the cause to the District Court, and the record of proceedings in the State Court were filed in the District Court.

On Sept. 8, 1950, an additional summons directed to appellee was issued out of the District Court and the return thereto reflects that the summons was served upon appellee by delivering a copy thereof together with a copy of the complaint to Paul T. Briardy, "as a managing agent of such defendant corporation transacting business for it in the State of Florida, * * *."

The return also recites that Mr. Briardy "denied that he was such agent or was transacting business for Cowles Magazines, Inc., in the State of Florida or was a person authorized to accept process for the defendant."

On Sept. 18, 1950, the appellee, appearing specially, moved in the District Court to dismiss or in lieu thereof to quash return of service of the additional summons, and the motion, as amended, was granted.

The depositions of Marvin C. Whatmore, vice-president and business manager and director of the appellee corporation, and of Paul T. Briardy, who described himself as a "Circulation Road Man", were taken by the appellant for the purpose of establishing that the appellee was, and is, doing business in the State of Florida, so as to be amenable to service in that state, and that Briardy was an agent transacting business for it in Florida.

The appellee company was incorporated in Iowa and maintains offices there in Des Moines. Offices are maintained in various other cities not in Florida. It has not qualified to do business in Florida, has no bank accounts there, nor any books or records, maintains no telephone listing there and no officers, directors or employees except Mr. Briardy work in the state.

As pertains to newsstand sales, orders for Look Magazine received from wholesale distributors are sent to a bindery, an independent contractor in Chicago, which fills the individual orders by shipping the magazines to the wholesalers by common carriers.

The magazines are distributed to newsstand retail dealers in Florida by the American News Company and, in the Panama City area, by Cooper News Company who are described as independent wholesalers. Average issue circulation in Florida is about 48,000 copies.

In addition to newsstand sales magazines are mailed to individual subscribers. Fifty percent of individual subscriptions in Florida have been procured through direct mail. Other subscribers in the state "have purchased subscriptions through agents—agents selling the subscriptions and sending the order to us with cash" and there has been a consistent practice in the past to have subscription agents in Florida to sell subscriptions. These agents are, in many cases, large companies operating out of New York or Philadelphia. They employ crews which tour the country and at times get into Florida. Crew members are employees of the subscription agency houses. Such agents do not solicit exclusively for the appellee but for many other magazine publishers as well.

There are a few part-time subscription salesmen or agents actually operating in Florida. These produce no more than 250 out of 10,000 subscriptions obtained annually. They work on a pre-determined commission basis and withhold this commission from the amount collected. The balance is remitted with the order to the subscription office in Des Moines. Subscriptions are subject to acceptance only by the appellee.

Over the years writers in the employ of the appellee have gone into Florida for material and information.

The appellee places advertising in newspapers throughout the country and Mr. Whatmore stated that he was sure, "subject to check," that advertising had been placed in Florida newspapers in order to promote sales and increase circulation.

Circulation is important both as a source of revenue and as a basis for advertising rate structure. The company employs, on its circulation staff, road men or district men formerly called "assistant circulation managers" to follow up complaints and check magazine shortages. Paul T. Briardy is so employed for the southeast district composed of Florida, South Carolina, Mississippi, Alabama and Georgia. His duties are to travel the territory regularly, check retail outlets to find out about conditions, make sure the company gets proper positions on newsstands "and in general get the most efficient sale possible". "You

Title 28 U.S.C., appellee, defendant below, as strongly insists that the judgment was right and must be affirmed.

Citing many cases[2] holding that there must be substantial prosecution, with its authority, of some essential business of the corporation within a state before it can be said that the foreign corporation is doing business there, to an extent sufficient to justify a court in asserting jurisdiction over it, appellee insists that the finding and judgment of the court are in full accord with established principles.

It particularly relies on cases dealing with libel suits against publishers of magazines, such as Street & Smith Publications, Inc. v. Spikes, 5 Cir., 120 F.2d 895; Cannon v. Time, Inc., 4 Cir., 115 F.2d 423; Whitaker v. MacFadden Publications, 105 F.2d 44; Neely v. Philadelphia Inquirer Co., 61 App.D.C. 334, 62 F.2d 873; Layne v. Tribune Co., 63 App.D.C. 213, 71 F.2d 223.

Appellant in its turn urges upon us that International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95, represents, and has brought about

a change in, the decisions, and that with and since that decision, it has taken very little evidence of the presence in a state of a corporate representative to support a finding that it was doing business there, citing in support French v. Gibbs Corp., 2 Cir., 189 F.2d 787 and Consolidated Cosmetics v. D–A Pub. Co., Inc., 7 Cir., 186 F. 2d 906.

Insisting. that if this is not so, the court, in International Shoe Co., supra, merely again applied the earlier case of International Harvester v. Com. of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and that the decision of the Supreme Court of Florida, in Hormel & Co. v. Ackman, 117 Fla. 419, 158 So. 171, fully supports its contention that there was jurisdiction here, appellant further insists that appellee and the district judge are unduly narrowing the meaning of doing business as discussed in the authorities and prescribed in 1391(c).

We do not think so. Instead of this being a stronger case for jurisdiction than some of the others cited, we think it is a much weaker one. Indeed, we think the claim that this company was doing business

---

might say he is a promotion and complaint man". He must see that there is proper display, write the company in New York if the retailer does not get enough copies, or call the local branch manager of the American News Company. His function is to increase circulation to the best of his ability.

He has no authority to commit the company to any expenses except his own traveling expense which includes postage for his reports and telegraph and telephone charges.

Mr. Briardy testified that he has no place of residence; that he travels out of a suitcase from town to town. He said, "I have no place except a letter drop in Miami, and all other mail in hotels".

He drives his own car for which the company pays him a flat rate of $30 per week. This includes everything incident to the use of the car in the performance of his duties. His salary is $75 per week.

His time is fairly well proportioned among the five states of his territory. He spends a considerable portion of his time in Florida and he tries to follow a regular itinerary.

In addition to other duties Mr. Briardy also occasionally puts up advertising displays in retail stores. He obtains some of these displays from the New Company and occasionally a few are sent to him from the appellee company.

Mr. Whatmore stated that advertising displays are sent direct to retailers by the appellee's New York office and also may be included in individual magazine bundles.

2. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Peoples Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Philadelphia & Reading Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Green v. Chicago B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, 19 S.Ct. 308, 43 L.Ed. 569; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179.

in Florida is completely refuted by the detailed testimony of Briardy and Whatmore. In three recent cases, this court has had occasion to consider and review the state of the law in connection with situations of this kind. In Employers Liability v. LeJeune, 5 Cir., 189 F.2d 521, Rosenthal v. Frankfort Distillers, and (Rosenthal v. Glazer's Wholesale Drugs Co.,) 5 Cir., 193 F.2d 137, and in Pacific Employers Ins. Co. etc. v. Parry Navigation Co., 5 Cir., 195 F. 2d 372, citing and reviewing the authoritative cases, we have pointed out that no such showing of doing business was made there as would justify the exercise of jurisdiction.

We think this is equally true here. It is true that the approach of some of the recent opinions to the question under review has seemed less rigid in its requirements for jurisdiction than the earlier approach. We think, though, that they, and the new statute which embodies them, must be regarded, not as changing, but as restating and clarifying, the law. They certainly do not furnish warrant for the view pressed upon us by appellant that, because of the activities of Briardy here, the company can be said to be doing business in the state so as to be subject to suit there.

The judgment was right. It is

Affirmed.

RUSSELL, Circuit Judge (dissenting).

The majority opinion sets forth the facts of the case and also the appellant's contentions and citations of the applicable law. I think the authorities relied upon for reversal require that result since, in my opinion, the facts present show that the activities of the defendant (circulation and sale and the promotion thereof) amounted to "doing business" within the State of Florida; the injury claimed, if existent, is connected with such activities; and the defendant had an agent in Florida upon whom service could properly be effected. Florida Statutes Annotated, § 47.17(5). I respectfully dissent.