Owen BREWSTER, Plaintiff,

v.

BOSTON HERALD-TRAVELER COR-
PORATION, Defendant.

No. 4-63.

United States District Court
D. Maine, S. D.

May 24, 1956.

Philip F. Chapman, Jr., Portland, Me.,
for plaintiff.

Leonard A. Pierce, Portland, Me.,
Jerome E. Andrews, Jr., Boston, Mass.,
for defendant.

CLIFFORD, District Judge.

This matter comes before this Court upon a motion filed by the defendant to dismiss the complaint. Its motion is based upon two grounds: first, the defendant was not and is not subject to service of process within the District of Maine; and second, that the defendant has not been properly served with process.

On July 1, 1955 the plaintiff, who has held various high public offices, brought an action of libel against the Boston Herald-Traveler Corporation, a Massachusetts corporation having its principal place of business at 80 Mason Street, Boston. Service was purportedly made upon the defendant by delivering a copy of the summons and of the complaint to Mr. Frank J. Capp as "general agent and person for service in the State of Maine."

The parties agreed that the motion to dismiss should be decided by this Court upon the basis of (1) the pleadings, including the Marshal's return of service and the two affidavits in support of the defendant's motion to dismiss; (2) the deposition of Mr. Frank J. Capp taken on October 18, 1955 (but excluding therefrom any references to what the City Directory for the City of Portland might or might not show); and, (3) the stipulation of counsel that there is an action pending in the United States District Court for the District of Massachusetts between the same parties for the same cause of action, in which the defendant has pleaded to the merits.

The material facts, as found by this Court, are as follows: The defendant is a Massachusetts corporation with its place of business at 80 Mason Street, Boston. It is engaged in the business of publishing two newspapers, The Boston Herald and The Boston Traveler. Both of these newspapers are published in Boston, with none of its publishing activities carried on in Maine. The defendant has not registered and is not licensed to do business in Maine; it has no office or other place of business in Maine; it has no bank account in Maine; its name is not listed in the Portland Telephone Directory, or in any other telephone directory in Maine; it has no post office box or other mailing address in Maine; and, no records as to circulation or otherwise are kept in Maine. The defendant has no property in Maine other than an automobile which is used by its single employee working in this State.

The defendant conducts no news-gathering activities within the State of Maine. For coverage of Maine events, the defendant relies upon the services of the Associated Press. Occasionally the defendant accepts articles or other contributions from persons located in the State of Maine, but such persons are not employees of the defendant and are not on the defendant's payroll, and their articles and other contributions are paid for on that basis only. Such articles and other contributions are submitted to the defendant at its place of business in Boston and are subject to acceptance or rejection by the defendant, in Boston.

To the extent that the defendant's newspapers are circulated within the State of Maine, the newspapers are sold by the defendant in one of two ways. Some of the circulation comes from individual subscriptions received by mail from persons living in Maine and filled by mail by the defendant. The remaining newspapers are sold to independent dealers located in Maine who handle the defendant's newspapers as well as those of defendant's competitors, and who in turn distribute the defendant's newspapers as well as those of defendant's competitors to the dealer's own outlets. Both with regard to the individual mail subscriptions and with regard to sales to dealers, the orders come by mail and are subject to acceptance or rejection by the defendant at the defendant's place of business in Massachusetts. According to a recent audit, the combined circulation of the daily and Sunday Herald and the Traveler in Maine was approximately 3.2 per cent of the total combined circulation of the three newspapers, or approximately 18,507 out of a total combined circulation of approximately 588,719.

In 1954 the amount of advertising space sold to Maine advertisers was approximately one tenth of one per cent of the defendant's total advertising volume for the year, or approximately $14,000 out of a total advertising volume of $12,706,306. Most of the Maine advertising was placed by Maine resort establishments or local Chamber of Commerce organizations and was directed at readers outside of the State of Maine.

Its only employee in Maine is Mr. Frank J. Capp, who is employed as a circulation roadman. His activities consist largely of acting as liaison man between the Boston office and the Maine dealers and distributors, funneling information into the Boston office, and transmitting instructions from the Boston office. He has little or no discretion. In almost every instance the decision is made in Boston. For instance, while one of Capp's duties is to contact the dealers and make a recommendation to the home office as to whether the dealer should be supplied more or fewer papers, it is clear that the only thing which Capp has the power to decide is what his recommendation will be to the Boston office, and that the actual decision as to whether the number of papers shall be increased or decreased is made in Boston. Similarly, while Capp occasionally makes recommendations as to whether a particular dealer should be dropped or a new dealer added, the final decision is made in Boston, not always in accordance with Capp's recommendation. And while Capp is sometimes instructed to call on specific delinquent accounts, he has no authority either to compromise or adjust the account or to institute suit. Even when it comes to the adjustment of complaints, if it is a matter of any importance, he discusses it with the Boston office before he proceeds. In ten or fifteen cases each year, when the normal supply of papers does not get through, Capp has acted as an emergency truckman, picking up papers where directed by his Boston superior and delivering them to the dealer designated by his superior.

He is a member of the union and is classified under the union contract as being in a non-supervisory capacity. He has no office and his name is not linked with that of the defendant either in any advertising or any telephone book or on the letterhead of either his own stationery or that of the Boston Herald-Traveler. He has no contact with reporters or contributors and has nothing to do with advertising and little or nothing to do with direct mail subscriptions.

■ Jurisdiction of this action is based solely upon diversity of citizenship. Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service of process on a foreign corporation is valid if made in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the State in which the service is made. There being no applicable federal statute, and service having been attempted under the procedure of this State, this matter is governed by the requirements for valid service in Maine.

Service upon foreign corporations in Maine is covered by two different chapters of the Revised Statutes of Maine 1954. By Section 19 of Chapter 112, a foreign corporation is subject to service in Maine if it has "a place of business within this state" or is "doing business herein". Section 127 of Chapter 53 provides for service upon the Secretary of State in any action arising as a result of the foreign corporation "doing business" in Maine, if it has not appointed an agent for service as required by law.

■ The principal issue in this matter, therefore, is whether under the law of the State of Maine the Boston Herald-Traveler had "a place of business within this state" or was "doing business" in Maine. There is no decision of the Supreme Judicial Court of Maine helpful in resolving this question. Consequently, it is necessary for this Court to make its own determination as to how the Maine court would decide the question presented.

Recent decisions of this Circuit have considered International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, as demonstrating that the constitutional requirements of jurisdiction have been liberalized and are not as strict as they were formerly presumed to be. Schmikler v. Petersime Incubator Co., 1 Cir., 177 F.2d 983; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193. According to the International Shoe case the test under the "due process" clause is whether or not a foreign corporation is "sufficiently present" within the forum so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. See also, Polizzi v. Cowles Magazines, 1953, 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331.

By employing the broad concept of "doing business", the Maine statute could be applied to the extent indicated by the rationale of the International Shoe decision. But it is unnecessary to consider the question of federal constitutional limitations because this Court is of the opinion that the Maine courts would hold that the Boston Herald-Traveler was not doing business in Maine and therefore not subject to service of process within this State.

Each case involving the question of whether a foreign corporation was doing business within the State so as to be amenable to its process must stand upon its own particular facts. Bank of America Nat. Trust & Sav. Ass'n v. Lima, D.C. Mass.1952, 103 F.Supp. 916; Hinchcliffe Motors v. Willys-Overland Motors, D.C. Mass.1940, 30 F.Supp. 580. Because the factors entering into each case are so variable, no general rules can be determined. Even within the relatively narrow category of newspaper publishers, there are cases, involving apparently substantially similar circumstances, which have reached opposite results. See Annotation, *What constitutes doing business within state by a foreign magazine, newspaper, or other publishing corporation for purposes other than taxation*, 38

A.L.R.2d 747 (1954). Hence, decisions involving a category of business other than newspaper publishers, although in some instances helpful, are not directly controlling. Nor are cases decided under statutes narrower in scope than that of Maine applicable to this action.

Specifically with regard to foreign publishing corporations, however, there are a number of decisions in which the defendant has carried on much greater activities in the foreign state than did the Boston Herald-Traveler in Maine. Whitaker v. Macfadden Publications, 1939, 70 App.D.C. 165, 105 F.2d 44; Kriger v. MacFadden Publications, D.C. Md.1941, 38 F.Supp. 472; Lee v. Memphis Pub. Co., 1943, 195 Miss. 264, 14 So. 2d 351, 152 A.L.R. 1428; Cannon v. Time, Inc., 4 Cir., 1940, 115 F.2d 423; Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908. And each of these cases holds that the foreign publishing corporation was not doing business in the State in which its publications were circulated but not published, and, therefore, was not subject to service of process within that State. See also Street & Smith Publications v. Spikes, 5 Cir., 1941, 120 F.2d 895, certiorari denied 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed. 524; Lauricella v. Evening News Pub. Co., D.C.E.D.N.Y.1936, 15 F. Supp. 671; Merrimon v. Martindale-Hubbell, Inc., D.C.E.D.S.C.1940, 36 F. Supp. 182; Polizzi v. Cowles Magazines, 5 Cir., 1952, 197 F.2d 74, reversed on other grounds 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331.

It makes no difference that in addition to the defendant's newspapers being circulated in Maine, the defendant also employed Mr. Capp in the capacity of circulation roadman. In a number of the cases cited above, the defendants employed representatives in much the same capacity as Mr. Capp, and yet the defendants were held not to be doing business and thus not amenable to service of process. Whitaker v. Macfadden Publications, 105 F.2d 44, supra; Kriger v. MacFadden Publications, 38 F.Supp.

472, supra; Lee v. Memphis Pub. Co., 195 Miss. 264, 14 So.2d 351, supra; Schmidt v. Esquire, Inc., 210 F.2d 908, supra; Polizzi v. Cowles Magazines, 197 F.2d 74, reversed on other grounds 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331, supra; Merrimon v. Martindale-Hubbell, Inc., 36 F.Supp. 182, supra.

Also, in a number of other cases, concerning different categories of business but involving employees or representatives whose duties were more extensive and more responsible than those of Mr. Capp, it has been held that the defendant was not doing business within the State. Boston Packaging Machinery Co. v. Woodman Co., D.C.D.Mass.1954, 125 F.Supp. 567; Pellegrini v. Roux Distributing Co., Inc., 1951, 170 Pa.Super. 68, 84 A.2d 222; Hoffman v. D. Langdreth Seed Co., 220 S.C. 193, 66 S.E.2d 813; Roberts v. Evans Case Co., 7 Cir., 1955, 218 F.2d 893; Solt v. Interstate Folding Box Co., D.C.E.D.Pa.1954, 123 F.Supp. 376.

Although there are a few decisions to the contrary, see Annotation, 38 A.L.R. 2d 747, and especially the dissenting opinion in Polizzi v. Cowles Magazines, Inc., 1953, 345 U.S. 663, 73 S.Ct. 900, 97 L. Ed. 1331, they are distinguishable upon their facts and are not controlling in this matter. Accordingly, in view of the applicable decisions cited above, this Court is of the opinion that, under all of the facts and circumstances of this case, the defendant corporation was not "doing business" in Maine, and, therefore, was not subject to service of process within this State.

Moreover, this Court is also of the opinion that this action must be dismissed because even if the Boston Herald-Traveler were "doing business" in Maine, it was not properly served with process. Mr. Capp, the person upon whom the plaintiff attempted to make service, was not a proper person for service within the meaning of Federal Rule 4(d) (3), or an "agent" within the meaning of the Maine service-of-process stat-

ute, Chapter 112, Section 19 of the Revised Statutes of Maine 1954.

It is therefore ordered, adjudged and decreed that the motion to dismiss the complaint be and hereby is granted and the complaint is hereby dismissed.