Samuel INSULL, Plaintiff,

v.

NEW YORK WORLD–TELEGRAM CORPORATION, a corporation, Roy W. Howard, Memphis Publishing Company, a corporation, Edward J. Meeman, Indianapolis Times Publishing Company, a corporation, Walter Leckrone, E. W. Scripps Company, a corporation, Louis B. Seltzer, Dick Thornburg, Herald-Post Publishing Co., a corporation, Edward M. Pooley, Knoxville News-Sentinel Publishing Company, a corporation, Loye W. Miller, Pittsburgh Press Company, a corporation, Weidman W. Forster, New Mexico State Tribune Company, a corporation, Dan. Burroughs, Charles T. Lucey, Arthur M. Schlesinger, Jr., Houghton Mifflin Company, a corporation, Kenneth E. Trombley, and Harper & Brothers, a corporation, Defendants.

Nos. 58 C 108, 58 C 150, 58 C 151.

United States District Court
N. D. Illinois, E. D.

April 8, 1959.

616

Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., for plaintiff.

Elmer Gertz, Bell, Boyd, Marshall & Lloyd, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendants.

MINER, District Judge.

These are three actions to recover compensatory and punitive damages for alleged libels published by ten corporate and twelve individual defendants. They were originally filed as one action in the Circuit Court of Cook County on December 30, 1957 (Law No. 57 C 18759), and subsequently removed to this Court by defendants pursuant to 28 U.S.C. (1952 ed.) § 1441.

Plaintiff is an Illinois resident. No defendant is a resident of Illinois. One corporate defendant (Houghton Mifflin Company) is licensed to do business in Illinois, and service was had on its registered agent in accordance with Section 111 of the Illinois Business Corporation Act (Ill.Rev.Stat. (1957), c. 32, § 157.111).[1] All other defendants were served with process at their respective places of residence under Section 16(1, 2) of the Illinois Civil Practice Act (Ill. Rev.Stat. (1957), c. 110, § 16(1, 2)).[2]

The complaint is in six counts. Counts 1 and 4 complain of an alleged libel promulgated by New York World-Telegram Corporation, a New York corporation and resident, and Roy W. Howard, a New York resident-citizen and editor of "The New York World-Telegram and The Sun" published by said corporation; Memphis Publishing Company, a Delaware corporation operating in Memphis, Tennessee, and Edward J. Meeman, a Tennessee resident-citizen and editor of "The Memphis Press-Scimitar" published by said corporation; Indianapolis Times Publishing Company, an Indiana corporation and resident, and Walter Leckrone, an Indiana resident-citizen and editor of "The Indianapolis Times" published by said corporation; E. W. Scripps Company, an Ohio corporation and resident, Louis B. Seltzer, an Ohio resident-citizen and editor of "The Cleveland Press" published by said corporation, and Dick Thornburg, an Ohio resident-citizen and editor of "The Cincinnati Post" published by said corporation; Herald-Post Publishing Company, a Texas corporation and resident, and Edward M. Pooley, a Texas resident-citizen and editor of "The El Paso Herald-Post" published by said corporation; Knoxville News-Sentinel Company, a Tennessee corporation and resident, and Loye W. Miller, a Tennessee resident-citizen and editor of "The Knoxville News-Sentinel" published by said corporation; Pittsburgh Press Company, a Pennsylvania corporation and resident, and Weidman W. Forster, a Pennsylvania resident-citizen and editor of "The Pittsburgh Press" published by said corporation; New Mexico State Tribune Company, a New Mexico corporation and resident, and Dan Burrows, a New Mexico resident-citizen and editor of "The Albuquerque Tribune" published by said

1. "Service of process in any suit, action, or proceeding, or service of any notice or demand required or permitted by law to be served on a foreign corporation may be made on such corporation by service thereof on the registered agent of such corporation. * * *"

2. "(1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication.

"(2) The service of summons shall be made in like manner as service within this State, by any person over 21 years of age not a party to the action. No order of court is required. An affidavit of the server shall be filed stating the time, manner and place of service. The court may consider the affidavit, or any other competent proofs, in determining whether service has been properly made."

corporation; and Charles T. Lucey, a Maryland resident-citizen employed as a staff writer by the so-called Scripps-Howard Newspaper Alliance of Washington, D. C.[3]

Both counts refer to an article written by defendant Lucey which appeared in the October 8, 1957, editions of the newspapers published and edited by the Scripps-Howard defendants, the pertinent excerpt being:

"Some of labor's entrenched leaders have been getting away with racketeering practices of a kind that sent the Samuel Insulls and Richard Whitneys to jail when big business tycoons were cut down to size in the 1930's".

Count 1 demands recompense for injury to plaintiff's "good name, reputation, trade, business and occupation". Count 4 deals with defamation of "the memory of plaintiff's father, all to the great damage and injury of plaintiff."

The Scripps-Howard defendants have filed a motion to dismiss the cause as to them for lack of jurisdiction over their persons. In support, they have submitted affidavits by the defendant editors[4] showing:

(a) the state of incorporation and residence and the principal place of business of each corporate defendant, none being within Illinois;

(b) the place of printing of the newspaper published by each corporate defendant, none being within Illinois;

(c) that any Illinois distribution of newspapers published by each corporate defendant is always subsequent to distribution in the city and state where printed;

(d) the number and destination of, and revenue from, copies of each newspaper mailed or shipped into Illinois each day;

(e) that where copies are destined for newsstands or wholesale distributors within Illinois, neither the corporate defendants nor the newspapers published by them exercise any control or supervision over the proprietors thereof;

(f) that payments from Illinois subscribers, newsstands and wholesale distributors are received by mail at the places of business of the respective corporate defendants;

(g) that no corporate defendant or newspaper published by it is licensed or authorized to do business in Illinois, has a registered agent in Illinois, maintains any office in Illinois or is listed in any Illinois telephone or business directory;

(h) that no corporate defendant or newspaper published by it employs as its agents any reporters, advertising solicitors or other persons who are permanently located within Illinois;

(i) that no corporate defendant or newspaper published by it owns or maintains any assets within Illinois in the nature of realty or personalty and none has a bank account within Illinois;

(j) that no defendant affiant personally owns or operates any business within Illinois, and that on and since December 30, 1957, each defendant affiant has resided in a state other than Illinois.[5]

Affidavits have also been obtained from officers, managers or proprietors of the wholesale distributor and newsstands in Illinois which receive copies of the newspapers published and edited by the Scripps-Howard defendants.[6] In sub-

---

3. These will be referred to generally as the "Scripps-Howard defendants" and more particularly as the "Scripps-Howard corporate defendants" or the "Scripps-Howard individual defendants".

4. The affidavit showing the operations of the newspaper published by the New York World-Telegram Corporation is by Lee B. Wood, executive editor of said newspaper, who is not a party defendant.

5. An affidavit by defendant Lucey is limited solely to this item (j).

6. William R. Jentes, an attorney for the Scripps-Howard defendants, on information and belief from personal observation and inquiry, deposes concerning one newsstand.

stance, the showing made by these affidavits is that the said Illinois distributor and newsstands:

(a) are operated in such a manner as their directors, officers, managers or proprietors alone determine;

(b) are not the agents, employees or servants of any of the Scripps-Howard defendants;

(c) purchase from the Scripps-Howard corporate defendants, as independent contractors for their own account, copies of newspapers published by the said defendants;

(d) receive said newspapers by mail or rail from outside Illinois;

(e) make payment for said newspapers by mail to the Scripps-Howard defendants or their agents who are located outside Illinois;

(f) make no newspaper purchases, either directly or indirectly, from any of the Scripps-Howard defendants other than the one or several of said defendants specifically identified in each respective affidavit, or other than through an Illinois distributor;

(g) respectively sell said newspapers to newsstands or to individual purchasers, and do not account to any of the Scripps-Howard defendants for any of the proceeds and avails of said sales.

Said defendants have attached to their supporting brief three tables, each showing by average number of copies, average revenue and percentage of circulation the extent of Illinois distribution of each of the newspapers published by the Scripps-Howard corporate defendants. Table A demonstrates that Illinois subscribers receive daily a minimum of 6 to a maximum of 37 copies of each newspaper, that the daily revenue averages a minimum of 12 cents to a maximum of $4.44, and that the daily Illinois circulation comprises a minimum of .006½% to a maximum of .03% of that for each newspaper. Table B, "Defendants' Newspapers Mailed Daily to Independent Newsdealers in Illinois", and Table C, "Defendants' Newspapers Mailed Daily to an Independent Wholesaler in Illinois", demonstrate that Illinois circulation by these methods is even more minimal.

Counts 2 and 5 demand judgment against Arthur M. Schlesinger, Jr., alleged by the complaint to be a resident of Massachusetts, and Houghton Mifflin Company, of Boston, Massachusetts.[7] The complaint avers, and Houghton Mifflin Company does not deny, that it is authorized to transact business in Illinois.

Both counts refer to a book, "The Crisis of the Old Order (The Age of Roosevelt)", written by defendant Schlesinger and published by defendant Houghton Mifflin Company in January, 1957. Excerpts which plaintiff deems libelous are:

"Insull's ideas extended far beyond his own utilities system. From his estate in Libertyville, he dominated Chicago, bribing the state utilities commission, affably encouraging the corruptions of local politics, even building an opera house." Chapter 15, page 120.

"If Kreuger, the Match King, was a gigantic thief, what Titan—or even Tycoon—could be trusted in the future? In Chicago, investors were already haunting the offices of Samuel Insull, demanding that he make good on his worthless stock. Protected night and day by thirty-six personal bodyguards, Insull, who believed in his own magic, tried to save his crumbling estate through new loans and new manipulations. But his fantastic improvisation was slowly dematerializing before everyone's eyes. When he abruptly departed for Europe in 1932, having resigned his eighty-five directorships, his sixty-five chairmanships, and his eleven presidencies, the New York Times wrote, 'Mr. Insull fell, not because his ideals were wrong, but because of his persistent op-

---

7. These will be referred to generally as the "Schlesinger defendants".

timism * * * He stands withal as one of the foremost and greatest builders of American industrial empires.'

"Yet by September it seemed possible that the great industrial builder was guilty of more than optimism; in the next months a Cook County grand jury indicted him for embezzlement. Soon his lawyers were sending him coded telegrams advising him to seek refuge beyond extradition in Greece. The old man, sitting disconsolately in European exile, could not understand what had happened. 'Why am I not more popular in the United States?' he said. 'What have I done that every banker and business magnate has not done in the course of business?' And Donald Richberg, Insull's old enemy in Chicago, voiced the popular verdict: 'The true significance of the career of Samuel Insull lies in the fact that his sins were *not* exceptional, save in the sweep of his ambitions and the extent of the injuries he inflicted.' " Chapter 26, pages 254–255.

Count 2 alleges injury to plaintiff's "good name, reputation, trade, business and occupation", while Count 5 demands damages for defamation of "the memory of plaintiff's father, all to the great damage and injury of plaintiff."

Defendant Schlesinger has appeared specially and has moved to dismiss the action as to him and to quash the return of summons for lack of jurisdiction over his person.

Both Schlesinger defendants have further moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, 28 U.S.C.A.,[8] to dismiss Counts 2 and 5. In support, they have filed affidavits of their attorney in an effort to show that,

as a matter of law, plaintiff could not have been libeled by anything in the Schlesinger book, because plaintiff's name is, in fact, "Samuel Insull, Jr.", not "Samuel Insull", and his sole reputation is as "Samuel Insull, Jr."

Alternatively, the said defendants have moved under Rule 20, Federal Rules of Civil Procedure,[9] to sever Counts 2 and 5 and proceed with them separately from the remainder of the complaint. In support, said defendants state that the right to relief alleged against them arises out of a totally independent transaction or occurrence, and that it does not involve questions of fact or law common to the rights to relief asserted by plaintiff against the other defendants.

Counts 3 and 6 demand judgment against Kenneth E. Trombley, alleged to reside in Maryland and work in Washington, D. C., and Harper & Brothers, a New York corporation.[10] Both counts specify as libelous identical excerpts from the book, "The Life and Times of a Happy Liberal", written by defendant Trombley and published by defendant Harper & Brothers in 1954:

"The concluding years of the nineteenth century and the early ones of the twentieth, presented golden days for the nation's financiers. But as the 1900's settled down, reaction set in and the people demanded an accounting of what had been going on. In 1912, Senatorial investigators were told that one group of the money barons controlled something like $25 billion. Old J. P. Morgan himself admitted to Congressmen that he and seventeen of his colleagues held 746 directorships in 134 of the country's biggest banks, railroads, steamship lines, express companies, and industrial concerns. About this same time, Samuel In-

---

8. "(6) failure to state a claim upon which relief can be granted, * * *"

9. "(b) Separate Trials. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party

against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice."

10. These will be referred to generally as the "Trombley defendants".

sull was getting started out in Chicago; getting started on a career that was to end with his going to jail for embezzlement some twenty years later. He was the head man in the utilities field—a field probably more vulnerable to attack than others because of its almost unbelievably fallacious actions." Chapter III, page 35.

"Cooke finished Lecture Number One with a final blast at the 'education' operations of the utilities. He took particular note of a series of lectures given regularly at the School of Commerce at Northwestern University. A lecturer who had top billing there was the President of the Chicago Edison Company, Samuel Insull. He spoke on a subject he undoubtedly knew well, the 'Centralization of Power Supply.' If he convinced the students of this story, he had better luck than he had later with another story before a grand jury; they gave him twenty years to write new answers to their questions." Chapter IV, page 52.

As in the counts concerning the Scripps-Howard defendants and the Schlesinger defendants, the first Trombley count (Count 3) alleges injury to plaintiff by defamation of plaintiff, and the second Trombley count (Count 6) alleges injury to plaintiff by defamation of his father.

The Trombley defendants have appeared specially and have moved to dismiss Counts 3 and 6 and to quash the return of service. As grounds, they allege lack of jurisdiction over the person, insufficiency of service of process, the bar of the Illinois statute of limitations and failure to state a claim upon which relief can be granted. In the alternative, and on the same grounds, they have moved for summary judgment under Rule 56, Federal Rules of Civil Procedure.

Affidavits in support of such motions have been submitted by the chairman of the board of directors of defendant Harper & Brothers. In substance, they affirm that defendant corporation:

(a) is a New York corporation not registered to do business in Illinois;

(b) maintains no office or plant, and has no telephone listing in Illinois;

(c) owns property in Illinois only to the extent of books on consignment with various Illinois jobbers and book stores;

(d) is a book publisher and distributes its books nationally and internationally, including into Illinois;

(e) receives remittances for all Illinois orders and sales directly from jobbers and book sellers;

(f) ships all books purchased from it from outside Illinois;

(g) secures a substantial portion of orders in Illinois through three salesmen whose areas include Illinois;

(h) printed "The Life and Times of a Happy Liberal" in September and October, 1954;

(i) published and distributed said book to the general public on October 20, 1954;

(j) printed only 3,500 copies of said book, but bound only 2,500 of those copies and destroyed the remaining 1,000 copies;

(k) printed only one edition of said book;

(l) sold 872 copies of said book at full list prices and sold the remainder of said edition to a remainder house in October, 1956.

Plaintiff does not contest the facts affirmed by the affidavits filed by the Scripps-Howard defendants, the Schlesinger defendants and the Trombley defendants, nor does the complaint allege any facts inconsistent with or contradictory to the said affidavits. The parties differ solely as to the legal effect to be accorded the factual showing made by the well-pleaded allegations of the complaint and by the affidavits.

The issues presented by the various motions may be stated as follows:

I. May the in personam jurisdiction of an Illinois court in a libel action

be invoked by personal service of summons outside Illinois upon:

A. A publishing corporation foreign to the State of Illinois, when said corporation:

(1) has no business contact with and engages in no business activities within the State, either by agent or otherwise, except that a tiny percentage of copies of its newspaper is daily distributed to mail subscribers and/or independent news-dealers located within the State (issue raised as to Scripps-Howard corporate defendants);

(2) engages in selling activities within the State through its agents and employees, and retains title to books distributed to Illinois bookdealers on consignment, but has no other business contact with and engages in no other business activities within the State (issue raised as to defendant Harper & Brothers).

B. A citizen and resident of another state, when such individual has no contact with and engages in no activities within the State of Illinois, other than through the Illinois distribution of:

(1) newspapers for which, as an employee, he has editorial or reporting responsibilities (issue raised as to Scripps-Howard individual defendants);

(2) a book written by him but published and distributed by an independent publishing corporation (issue raised as to defendants Schlesinger and Trombley).

II. Does the Illinois one-year statute of limitations applicable to libel actions operate to bar an action filed on December 30, 1957, concerning an alleged libel first distributed to the general public on October 20, 1954, from without Illinois, but under no circumstances distributed after October, 1956 (issue raised by Trombley defendants).

III. May a plaintiff recover for the defamation of his father, whose name he bears (issue raised by Schlesinger and Trombley defendants as to Counts 5 and 6 of the complaint).

IV. Can the plaintiff be defamed, or a libel be directed at him, by a writing which does not name him by his usual name, Samuel Insull, Jr. (issue raised by Schlesinger and Trombley defendants as to Counts 2 and 3).

V. Should the claims asserted against the Schlesinger defendants be severed and a separate trial ordered as to them.

## I.

■ Every legal issue which arises in the trial of a case in this Court is, in a proper sense, determinable according to Federal law. With respect to many such issues, however, Federal law refers us to that of the state which is the situs of the dispute or which comprehends this district. 28 U.S.C.A. (1950) § 1652; Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, rehearing denied 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163; Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, rehearing and modification denied 326 U.S. 806, 66 S.Ct. 7, 90 L.Ed. 491; Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; DeSylva v. Ballentine, 1956, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415, rehearing denied 352 U.S. 859, 77 S.Ct. 22, 1 L.Ed.2d 69. To this extent, the Court is constantly presented with questions involving choice of law and must apply concepts which are in their essence conflicts of law rules. The most generally applicable of these concepts is that which refers this Court, at least in diversity cases removed from the State, to the law of Illinois to determine, on the threshold, whether it has jurisdiction over the person of a defendant.[11] See Freeman v.

---

11. This case, while presenting jurisdictional issues, does not involve questions of subject matter jurisdiction such as

were before the court in Harris v. American Legion, D.C.S.D.Ind.1958, 162 F. Supp. 700, affirmed per curiam 7 Cir.,

Bee Machine Co., Inc., 1943, 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509, rehearing denied 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489; Roberts v. Evans Case Co., 7 Cir., 1955, 218 F.2d 893; Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 7 Cir., 1952, 199 F.2d 485; Block v. Block, 7 Cir., 1952, 196 F.2d 930; Consolidated Cosmetics v. D–A Pub. Co., Inc., 7 Cir., 1951, 186 F.2d 906; Olshansky v. Thyer Mfg. Corp., D.C.N.D. Ill., 1952, 13 F.R.D. 227. See, also, Rule 4(d)(7), Federal Rules of Civil Procedure, 28 U.S.C.A. (1950). Cf. Rensing v. Turner Aviation Corp., D.C.N.D.Ill. 1958, 166 F.Supp. 790, 793.

### "Doing Business"

■ The general principle that a foreign corporation "doing business" within a state is, after proper service, subject to the jurisdiction of the state courts, at least as to causes of action arising out of such business, is well established in the law of Illinois. Hertz Corp. v. Taylor, 1959, 15 Ill.2d 552, 155 N.E.2d 610; G. W. Bull & Co. v. Boston & M. R. R., 1931, 344 Ill. 11, 175 N.E. 837; Craig v. Sullivan Machinery Co., 1931, 344 Ill. 334, 176 N.E. 353; American Hide & Leather Co. v. Southern Ry. Co., 1923, 310 Ill. 524, 142 N.E. 200; Pembleton v. Illinois Commercial Men's Ass'n, 1919, 289 Ill. 99, 124 N.E. 355, certiorari granted 251 U.S. 549, 40 S.Ct. 178, 64 L.Ed. 409, certiorari dismissed 253 U.S. 499, 40 S.Ct. 483, 64 L.Ed. 1032; Booz v. Texas & Pacific Ry. Co., 1911, 250 Ill. 376, 95 N.E. 460. See Morris & Co. v. Skandinavia Ins. Co., 7 Cir., 1936, 81 F.2d 346; 20 C.J.S. Corporations §§ 1922–1923. The decisions holding that a publishing corporation is not "doing business" within a state simply because its periodicals are sold in the state are legion. Putnam v. Triangle Publica-

tions, Inc., 1957, 245 N.C. 432, 96 S.E.2d 445; Reed v. Real Detective Pub. Co., Inc., 1945, 63 Ariz. 294, 162 P.2d 133; Deighan v. Beverage Retailer Weekly & Trade Newspaper Corp., 1940, 16 A.2d 612, 18 N.J.Misc. 705; Schmidt v. Esquire, Inc., 7 Cir., 1954, 210 F.2d 908, 914–916, certiorari denied Schmidt v. Crowell-Collier Pub. Co., 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646; Street & Smith Publications, Inc. v. Spikes, 5 Cir., 1941, 120 F.2d 895, certiorari denied 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed. 524; Cannon v. Time, Inc., 4 Cir., 1940, 115 F.2d 423; Whitaker v. MacFadden Publications, Inc., 1939, 70 App.D.C. 165, 105 F.2d 44; Brewster v. Boston Herald-Traveler Corp., D.C.Me.1956, 141 F.Supp. 760; Moorhead v. Curtis Publishing Co., D.C.W.D.Ky.1942, 43 F.Supp. 67.

In Cannon v. Time, Inc., supra, the defendant printed its publications in Illinois and shipped them by carrier to an independent contractor in Virginia, who, in turn, sold the magazines to the ultimate consumer. Unlike the Scripps-Howard corporate defendants, however, the contractor also solicited and collected subscriptions for the publisher. Despite this meaningful circumstance, the court squarely held that the defendant Illinois publisher was not "doing business" in Virginia:

"It is conceded that the defendants were not present doing business within the state by reason of the sale of magazines at the newsstands of the News Company (see Whitaker v. MacFadden Publications, 70 App.D.C. 165, 105 F.2d 44); and we do not think that presence and doing of business can be predicated on the acceptance of and collection for subscriptions upon which reliance is placed. * * * " 115 F.2d at page 425.

---

1958, 261 F.2d 594. But note the effect on that decision of 28 U.S.C.A. (1949) § 1332, as amended by Pub.L. 85–554, § 2, 72 Stat. 415 (July 25, 1958), characterizing a corporation a citizen of the state where it has its principal place of business (§ 1332(c)). Neither does it involve jurisdictional questions under

28 U.S.C.A. (1950) § 1391, since, being removed here from the state court, venue is proper under 28 U.S.C.A. (1950) § 1441. Polizzi v. Cowles Magazines, Inc., 1953, 345 U.S. 663, 73 S.Ct. 900, 97 L. Ed. 1331, petition for clarification denied 345 U.S. 988, 73 S.Ct. 1128, 97 L. Ed. 1397.

So, also, in Brewster v. Boston Herald-Traveler Corp., supra, the defendant published its papers and carried on all its activities outside Maine; as here, the only relationship to the state of suit was that defendant's newspapers were circulated within the state by mail or by independent dealers located within the state. Again, as here, all orders for periodicals were accepted or rejected from without the state. But, totally unlike the Scripps-Howard defendants, the Brewster defendant actually employed a full time circulation road man in Maine, and also owned personalty that was permanently located in the state. Despite these two significant contacts, the court held that the defendant did no business in Maine, stating:

"* * * there are a number of decisions in which the defendant has carried on much greater activities in the foreign state than did the Boston Herald-Traveler in Maine. Whitaker v. MacFadden Publications, 1939, 70 App.D.C. 165, 105 F.2d 44; Kriger v. MacFadden Publications, D.C.Md.1941, 38 F.Supp. 472; Lee v. Memphis Pub. Co., 1943, 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428; Cannon v. Time, Inc., 4 Cir., 115 F.2d 423; Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908. And each of these cases holds that the foreign publishing corporation was not doing business in the State in which its publications were circulated but not published, and, therefore, was not subject to service of process within that State. See also Street & Smith Publications v. Spikes, 5 Cir., 1941, 120 F.2d 895, certiorari denied 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed. 524; Lauricella v. Evening News Pub. Co., D.C.E.D. N.Y.1936, 15 F.Supp. 671; Merrimon v. Martindale-Hubbell, Inc., D.C.E.D.S.C.1940, 36 F.Supp. 182; Polizzi v. Cowles Magazines, 5 Cir. 1952, 197 F.2d 74, reversed on other grounds 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331:" 141 F.Supp. at page 763.

And, finally, in Reed v. Real Detective Pub. Co., Inc., supra, it was held that even though the publishing defendant made sales on consignment within the state, it did no business within the state such as would permit service.

Our Court of Appeals has also considered the problem of serving a publisher on the alleged ground that he becomes amenable to process because his periodical is distributed within the jurisdiction. The factual situation in Schmidt v. Esquire, Inc., supra, was substantially identical to that here:

"The question of personal jurisdiction * * * may be quickly disposed of. Affidavits filed with the District Court disclose the following: Esquire, Inc., is a corporation foreign to the State of Indiana and is not licensed nor admitted to do business there. It publishes the Esquire and Coronet magazines, which are available in Indiana either through subscription or at the newsstand. These magazines are printed in Chicago and are mailed directly from there to Indiana subscribers. They are placed on newsstands in Indiana by the Curtis Circulation Company, an independent corporation which purchases the magazines from Esquire and effects distribution through independent wholesale organizations. Esquire has no office of any kind in Indiana, and it has no employees or agent there to gather material for publication, nor to solicit advertising, subscriptions or newsstand sales.

"Under these facts, we do not see how it can seriously be contended that Esquire was amenable to suit in Indiana. In the Reader's Digest case the plaintiff concedes, as well he must, that something more than this is required to give local jurisdiction. Cannon v. Time, Inc., 4 Cir., 115 F.2d 423; Whitaker v. MacFadden Publications, 70 App. D.C. 165, 105 F.2d 44. Obviously the necessary contacts with the state

are absent here." 210 F.2d at page 916.

In this case, too, it cannot be seriously contended that the Scripps-Howard corporate defendants are amenable to process on the ground that they are "doing business" in Illinois. None has an agent within Illinois, owns any property within Illinois, or has any contact with Illinois other than to initiate from outside Illinois small interstate shipments of newspapers to several Illinois newsdealers and subscribers.

The same conclusion does not extend, however, to Harper & Brothers, the only other corporate defendant questioning the jurisdiction of this Court. This defendant is "doing business" within the State of Illinois in an amount, and with a regularity and consistency, sufficient to warrant the finding that it is subject to the jurisdiction of Illinois courts and, thus, to that of this. At least as to any damage caused plaintiff by this defendant's distribution of the alleged libel within Illinois, the combination of (a) its distribution of books in Illinois on a consignment basis, retaining title to those books, and (b) its employment of salesmen who regularly secure a substantial number of sales through personal contact with buyers in Illinois, compels the Court to conclude, as a matter of Illinois law, that Harper & Brothers is sufficiently "present" within the State to require that it answer this complaint. Cf. WSAZ, Inc. v. Lyons, 6 Cir., 1958, 254 F.2d 242; Consolidated Cosmetics v. D-A Pub. Co., Inc., 7 Cir., 1951, 186 F.2d 906.

### Illinois Civil Practice Act

In Illinois, the "doing business" principle is not the sole hurdle to be cleared by a foreign corporation in order to free itself of the obligation to answer to a claim. Notwithstanding that they have successfully maintained their position on the "doing business" test, the in personam jurisdiction of this Court will be sustained if the Scripps-Howard corporate defendants who contest it are deemed to have submitted thereto within the meaning of Section 17 of the Illinois Civil Practice Act, Ill.Rev.Stat. (1957), c. 110, § 17:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;

"(b) The commission of a tortious act within this State;

"(c) The ownership, use, or possession of any real estate situated in this State;

"(d) Contracting to insure any person, property or risk located within this State at the time of contracting.

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

Of the jurisdictional criteria listed in Section 17(1), only (a) and (b) are averred to support jurisdiction on the instant record. Paragraph (c) cannot apply, for it is uncontroverted that no moving defendant owns, uses or possesses any Illinois real estate. Paragraph (d) is clearly inapplicable.

Plaintiff insists that the Scripps-Howard corporate defendants have irrevocably submitted to the jurisdiction of Illinois courts as to this cause, (a) by mailing or shipping copies of their October 8, 1957, newspapers into Illinois and by receiving payments therefor through the mail from Illinois, and (b) by the (alleged) fact that a cause of action accrued to him through Illinois distribution of the alleged libel of that date. This Court is unable to agree that Section 17 characterizes the instant modes or consequent effects of that newspaper distribution as acts of submission to jurisdiction.

*"The transaction of any business"—Section 17(1) (a)*

The test under Section 17(1) (a) appears to be that the defendant or his agent transact the damaging business within Illinois, not that he or his agent transact the business outside Illinois, or even from outside Illinois with independent persons in Illlinois. Grobark v. Addo Machine Co., Inc., 1958, 18 Ill.App.2d 10, 151 N.E.2d 425. See Orton v. Woods Oil & Gas Co., 7 Cir., 1957, 249 F.2d 198, where plaintiffs attempted to characterize themselves as Illinois agents of the Delaware corporation they had been retained to establish. See, also, Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83, 87. True, 17(1)(d) may apply a more liberal test, but only as to a specific type of transaction (the contracting for insurance), the essential nature of which is the assumption of an express and continuing money obligation concerning a risk located in Illinois. Although jurisdiction premised upon such a transaction has been sustained as constitutional in terms which could also apply to other types of business transactions (McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 222–224, 78 S.Ct. 199, 2 L.Ed.2d 223; Travelers Health Ass'n v. Virginia, 1950, 339 U.S. 643, 647–649, 70 S.Ct. 927, 94 L.Ed. 1154; cf. Watson v. Employers Liability Assurance Corp., Ltd., 1954, 348 U.S. 66, 71–73, 75 S.Ct. 166, 99 L.Ed. 74), we are not thereby authorized to construe Section 17(1) (a) as incorporating by inference the more liberal 17(1) (d) test. See Haas v. Fancher Furniture Co., D.C.N.D.Ill.1957, 156 F. Supp. 564. By Illinois law, no statute may be construed more broadly than its express language and reasonable implications thereof permit. No construction placed upon the language of a statute is valid unless that language is susceptible of such a construction. Any other rule would cause a statute to fail in its prime function of apprising those who may be affected by it of the legislative purpose for which that language was used. People ex rel. Schoon v. Carpentier, 1954, 2 Ill.2d 468, 118 N.E.2d 315; People ex rel. Gutknecht v. City of Chicago, 1953, 414 Ill. 600, 111 N.E.2d 626; Jaffe v. Cruttenden, 1953, 412 Ill. 606, 107 N.E.2d 715; Baim v. Fleck, 1951, 406 Ill. 193, 92 N.E.2d 770; People ex rel. Duffy v. Hurley, 1949, 402 Ill. 562, 85 N.E.2d 26. The process of statutory construction is the process of divining legislative purpose from the form and substance of written language. The courts do not apply a different set of rules to that process when they deal with the language of a procedural statute which must concededly be given a liberal interpretation. Owens-Illinois Glass Co. v. McKibbin, 1943, 385 Ill. 245, 251, 52 N.E.2d 177, 180; Mouloupoulos v. Northern Trust Co., 1943, 384 Ill. 41, 46, 50 N.E.2d 737, 739.

Legislative history and declarations of policy are, of course, important aids to the construction of statutes in proper cases. But legislative history will not permit a court to construe a statute beyond any rational meaning of its provisions. Nor can declarations of policy refer the test of what a statute means to the criterion of what the Constitution permits.

The requirements for Section 17(1) (a) jurisdiction are met only when the business from which the alleged cause of action arises is transacted within Illinois. In the broadest sense, a piece of business is transacted within this State when an individual or a corporation is

within or enters this State in person or by agent and, through dealing herein with another, effectuates or attempts to effectuate herein a purpose directly related to his economic affairs or, if a corporation, to its corporate ends.[12]

Plaintiff has referred to two reported cases construing Section 17(1) (a) (Nelson v. Miller, 1957, 11 Ill.2d 378, 143 N.E.2d 673; Berlemann v. Superior Distributing Co., 1958, 17 Ill.App.2d 522, 151 N.E.2d 116) and a United States Supreme Court decision upon which its enactment was purportedly based (International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; see "Joint Committee Comments" and "Historical and Practice Notes", following Smith-Hurd Ill.Anno.Stats. (1956), c. 110, § 17, at p. 164).

In Nelson v. Miller, the employee of a Wisconsin resident, while delivering a stove, had negligently injured the plaintiff. After service of summons upon him in Wisconsin, defendant employer appeared specially to contest Illinois jurisdiction, averring that Sections 16 and 17, under which he was served, denied him due process of law. Mr. Justice Schaefer answered the attack with a most incisive analysis of United States Supreme Court decisions defining the constitutional limits of judicial power over foreign residents. In thus upholding the sections, he showed the striking parallel between cases which review the constitutionality of statutes subjecting nonresident motorists to state jurisdiction (Kane v. New Jersey, 1916, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Olberding v. Illinois Central Railroad Co., 1953, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39), and those which examine state action which subjects non-resident business proprietors, individual or corporate, to such jurisdiction (Flexner v. Farson, 1919, 248

U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250; Henry L. Doherty & Co. v. Goodman, 1935, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097; International Shoe Co. v. Washington, supra; Travelers Health Ass'n v. Virginia, supra; Watson v. Employers Liability Assurance Corp., supra).

In the Berlemann case, a defendant, a Colorado corporation, was personally served in Colorado to answer an Illinois suit for breach of contract and warranty. The breaches allegedly arose out of purchase orders secured from plaintiff by defendant's Illinois agent, which orders contained certain agreements by the defendant concerning the mechanical condition of, and Illinois location and service for, machinery which was thereby ordered, later delivered and subsequently tendered back. The Appellate Court held that the allegations of the complaint met "the standard prescribed by the Legislature for the extension of jurisdiction of Illinois courts to nonresidents", and that

> "* * * the cumulative effect of the securing of the purchase orders and the location contracts by employees in the State, coupled with its promise to send an employee to train plaintiff, was the transaction of *some* business in Illinois. The standards established by the U. S. Supreme Court which lend meaning to the broad language of Section 17(a) (1) [sic] are amply satisfied. Not only is there an allegation of more than 'minimum contact' with Illinois and one of its residents, but the cause of action arises out of and is directly connected with the defendant's activities in the State." 17 Ill.App.2d at page 526, 151 N.E.2d at page 118. (Emphasis by the court.)

The International Shoe case upheld the constitutionality of a Washington state statute which imposed an unem-

12. See Nippert v. City of Richmond, 1945, 327 U.S. 416, 427, 66 S.Ct. 586, 592, 90 L.Ed. 760, where the Supreme Court characterized solicitation as but the "initial step toward bringing [a transaction] about." Note, however, that the Illinois statute uses the word "transaction" in a verbal sense, not in the nominal form thus characterized by the Court as defining something more than solicitation.

ployment compensation tax upon, and authorized state court proceedings to recover unpaid amounts from, the non-resident corporate defendant. Defendant's sole contact with Washington was its employment of salesmen who exhibited samples and solicited orders in that state, and its reimbursement to them of the rental cost of permanent and temporary sample rooms. The opinion of the court summarizes the principles applicable to determine when a defendant, corporate or individual, is sufficiently "present" within a state to constitutionally support the assertion of jurisdiction.

Both Nelson and Berlemann construe Section 17(1) (a) as a legislative echo of the state jurisdictional power expressly upheld in International Shoe. Nelson and Berlemann, as well as the other cases which have upheld 17(1) (a) jurisdiction (Sunday v. Donovan, 1958, 16 Ill.App.2d 116, 147 N.E.2d 401; Haas v. Fancher Furniture Co., supra; see, also, People ex rel. Hoagland v. Streeper, 1957 12 Ill.2d 204, 145 N.E.2d 625), locate the persons or agents of their respective defendants within Illinois at the time the alleged business was transacted.[13] Not only has no case purported to apply 17(1) (a) if the defendant, in

person or by agent, has never entered into Illinois to transact the business from which the cause arises, but the cases which have denied its application do so for that very reason. Grobark v. Addo Machine Co., Inc., supra; E. Film Corp. v. United Feature Syndicate, Inc., D.C. N.D.Ill.E.D.1958, 172 F.Supp. 277;[14] Bonan v. Leach, D.C.E.D.Ill.1957, 22 F.R.D. 117. Cf. Orton v. Woods Oil and Gas Co., supra.

In view of this Court's adherence to this interpretation of 17(1) (a) and of its conclusion that the acts of the Scripps-Howard corporate defendants were insufficient to effect their submission to jurisdiction under its terms, the Court is not called upon to determine whether, if it were otherwise construed, the provision would be constitutional. It may be noted, however, that in recent Supreme Court decisions which sustain the constitutionality of "submission jurisdiction" over non-residents other than insurers, the defendants had manifested sufficient "presence" within or "minimum contacts" with the state to justify the assertion of that jurisdiction only through activities performed intrastate in person or by agent. International Shoe Co. v. Washington, supra; Perkins v. Benguet Consolidated Mining Co.,

---

13. See 1957, 12 Ill.2d 386, 146 N.E.2d 41, where the Illinois Supreme Court, in transferring the Berlemann appeal to the Appellate Court, said: "The complaint alleges certain conduct of the defendant in Illinois, and the plaintiff contends that this conduct amounted to the transaction of business within this State and that personal service of process outside of Illinois is therefore authorized by section 17. The defendant disputes this contention. It is unnecessary to state in detail *the acts performed by the defendant in Illinois*, because we are of the opinion that this court lacks jurisdiction of the case on direct appeal." (Emphasis supplied.)

14. The substance of this memorandum opinion of District Judge (now Circuit Judge) Knoch reads as follows:
"Plaintiff contends that service on defendant in New York City was properly made in compliance with section 17 of the Illinois Civil Practice Act (Ill.Rev.

Stat. c. 110, sections 16 and 17) as the cause of action arose out of transaction of business in Illinois by defendant who has thus submitted to the jurisdiction of the courts of this State.

"The facts are uncontroverted. The contract on which plaintiff bases its action was not entered into in Illinois. Although an employee of defendant lives in Illinois, he is not alleged to have had any connection with the contract in question. No office or telephone listing of defendant is maintained here. A visit to plaintiff's predecessor in Chicago by defendant's vice-president a month prior to the date of the offer mailed to New York and allegedly there accepted, might be construed as preliminary negotiation. However, it is the conclusion of this Court that plaintiff's contentions are not supported by the uncontroverted facts. It is ordered that defendant's motion be and it is hereby allowed and this action is hereby dismissed."

1951, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. See Erlanger Mills, Inc. v. Cohoes Fiber Mills, Inc., 4 Cir., 1956, 239 F.2d 502, where Chief Judge Soboleff struck down as unconstitutional the application of a North Carolina statute which authorized submission jurisdiction over a non-resident for out-of-state acts which had no relationship to North Carolina except that their effect was felt in that state. See, also, concurring and partly dissenting opinion of Mr. Justice Black in Polizzi v. Cowles Magazines, Inc., 1953, 345 U.S. 663, at 670, 73 S.Ct. 900, 97 L. Ed. 1331, petition for clarification denied 345 U.S. 988, 73 S.Ct. 1128, 97 L.Ed. 1397; dissenting opinion of Mr. Justice Minton in Travelers Health Ass'n, v. Virginia, supra, 339 U.S. at pages 658–659, 70 S.Ct. 927. In order for the assertion of such jurisdiction to satisfy the requirements of due process under the Fourteenth Amendment, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283. Cf. Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 312–313, 70 S.Ct. 652, 94 L.Ed. 865.

*"The commission of a tortious act"—Section 17(1) (b)*

■ The Illinois Supreme Court has specifically considered the burdens put upon a non-resident defendant who appears specially to contest Section 17(1) (b) submission jurisdiction. Nelson v. Miller, supra, 11 Ill.2d at pages 391–395, 143 N.E.2d 673, 680. That court rejected the contention that the issue is "whether upon the facts the defendant is liable to the plaintiff as a matter of substantive law". The test, then, is not whether "all of the elements that combine to spell ultimate liability in tort are present." Rather, the court said, the 17(1) (b) jurisdictional requirements are met (1) "when the defendant, personally or through an agent, is the author

of acts or omissions within the State," and (2) "when the complaint states a cause of action in tort arising from such conduct."

■ The *first* question appears, thus, to require application of the same criteria heretofore considered in our discussion of Section 17(1) (a). The principles there stated are equally valid here. Unless the Scripps-Howard corporate defendants, personally or through their agents, authored the Illinois acts or omissions alleged to have damaged the plaintiff, the terms of Section 17(1) (b) have not been met. The alleged wrongful Illinois acts were the respective Illinois distributions of October 8, 1957, newspapers. Neither personally nor through agents did these defendants distribute those newspapers within Illinois. It must, therefore, be concluded that they committed no tortious act in Illinois within the meaning of 17(1) (b). Hellriegel v. Sears, Roebuck & Co., D.C.N.D. Ill.1957, 157 F.Supp. 718, 720–721. See Hardy v. Bankers Life & Casualty Co., 1958, 19 Ill.App.2d 75, 153 N.E.2d 269. Cf. Rensing v. Turner Aviation Corp., D.C.N.D.Ill.1958, 166 F.Supp. 790, 799. In view of this conclusion, the Court is not required to consider the *second* question whether the complaint states a cause of action in tort arising from tortious acts committed within Illinois. The Nelson analysis sets forth the two requirements in conjunctive form. Both must be met for 17(1) (b) jurisdiction to exist. Failure to meet one is sufficient to dispose of the issue.

*The "Cause of Action"*

■ However, even were the Court to find that the Scripps-Howard distribution of newspapers into Illinois was "the transaction of any business" or "the commission of a tortious act" within Illinois, it could not agree that "any cause of action [arose] from" (Section 17(1)) the transaction of that business or the commission of that act. See, also, Section 17(3). At this point, we are not concerned with whether plaintiff has stated a good cause of action. The jurisdictional aspects of the case being our concern,

we are interested only in knowing whether the complaint, construed in the light of the affidavits, does by any reasonable standard state a cause of action for libel arising solely from the Scripps-Howard shipment of newspapers into Illinois. Illinois law, of course, controls.

■ Illinois subscribes to the "multiple communications-single publication" theory concerning libel. Winrod v. Time, Inc., 1948, 334 Ill.App. 59, 78 N.E.2d 708, leave to appeal denied 336 Ill.App. xiv; see Winrod v. MacFadden Publications, Inc., 7 Cir., 1951, 187 F.2d 180, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616. This means, in effect, that but one cause of action accrues to a plaintiff who alleges damage due to the widespread distribution of a writing. While in his Illinois suit, he may recover all his damages, no matter where sustained, he must bring that suit within a statutory one-year period from the date the writing was first "published". The theory is based on the desire to prevent circumvention of the Illinois statute of limitations where there are multiple communications of a single libelous matter.

However, the basic substantive concept that each "publication" of a libel yields a cause of action is not affected. "Publication" is still the gist of an action for libel. Ginsburg v. Black, 7 Cir., 1956, 237 F.2d 790, 793, certiorari denied 353 U.S. 911, 77 S.Ct. 669, 1 L.Ed.2d 665, rehearing denied 353 U.S. 951, 77 S.Ct. 859, 1 L.Ed.2d 860; 355 U.S. 865, 78 S.Ct. 92, 2 L.Ed.2d, 70; 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822.[15] It is the definition of "publication" which has been changed.

■ In Illinois, the law of the place where a tort occurs will govern as to the substantive aspects of a claim. Whitney v. Madden, 1948, 400 Ill. 185, 79 N.E.2d 593, certiorari denied 335 U.S. 828, 69 S.Ct. 55, 93 L.Ed. 382; Wall v. Chesapeake & Ohio Ry. Co., 1919,

290 Ill. 227, 125 N.E. 20, error dismissed 256 U.S. 125, 41 S.Ct. 402, 65 L.Ed. 856; Chicago & Eastern Illinois R. R. Co. v. Rouse, 1899, 178 Ill. 132, 52 N.E. 951, 44 L.R.A. 410; Ferroline Corp. v. General Aniline & Film Corp., 7 Cir., 1953, 207 F.2d 912, 920, certiorari denied 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1098, rehearing denied 347 U.S. 979, 74 S.Ct. 784, 98 L.Ed. 1118 and 348 U.S. 851, 75 S.Ct. 19, 99 L.Ed. 671; Smith v. Dravo Corp., 7 Cir., 1953, 203 F.2d 369, 373; Torcazo v. Statema, D.C.N.D. Ill.1956, 141 F.Supp. 769; see 86 C.J.S. Torts §§ 24–26. Prior to the Winrod case, this meant that liability in a multistate libel suit had to be proved in accordance with the law of each state in which the libel was alleged to have been communicated to a third person, each communication being a "publication". See O'Reilly v. Curtis Pub. Co., D.C. Mass.1940, 31 F.Supp. 364, 365. Post-Winrod, however, the courts are required to pick one state, notwithstanding the many in which such communication might have occurred, which is most properly identified as the place of "publication", and to apply its law on any substantive issue. (Cf. Hartmann v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 1 A.L.R.2d 370, certiorari denied 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763, and Kilian v. Stackpole Sons, Inc., D.C.M.D. Pa.1951, 98 F.Supp. 500, where the Pennsylvania "single publication" rule was applied only to distributions within Pennsylvania and other states following the rule.) The choice cannot be controlled by attempting to find that state in which the plaintiff may have been most severely damaged. The law disregards damage until it has been found to result from a legal wrong. Since we do not know whether any or how much damage has occurred, or where, until the prior determination of the important question of what law must govern the legal liability of a defendant, it would be most illogical to make the answer to the

---

15. See Bernstein v. National Broadcasting Co., D.C.D.C.1955, 129 F.Supp. 817, 824–825, affirmed 98 U.S.App.D.C. 112, 232 F.2d 369, certiorari denied 352 U.S. 945, 77 S.Ct. 267, 1 L.Ed.2d 239, concerning the gist of an action for invasion of privacy by interstate publication.

latter question depend on the as yet un- known answer to the former.

The Court is familiar with the views held by some that the law of the state of which the plaintiff is a domiciliary should control on the substantive issues in multi-state libel (Dale System, Inc. v. Time, Inc., D.C.Conn.1953, 116 F.Supp. 527; cf. Beauharnais v. Pittsburgh Courier Pub. Co., Inc., 7 Cir., 1957, 243 F.2d 705), and by others that the law of the forum state should govern (see Palmisano v. News Syndicate Co., Inc., D.C.S.D.N.Y., 1955, 130 F.Supp. 17, 19; Dale System, Inc. v. General Teleradio, Inc., D.C.S.D.N.Y.1952, 105 F.Supp. 745, 748–749; Prosser, "Interstate Publication", 51 Mich.L.Rev. 959 (1953); cf. Crosby v. Time, Inc., 7 Cir., 1958, 254 F.2d 927). But both views are as untenable where the "multiple communications-single publication" conflicts rule has been accepted as where the "multiple communications-multiple publications" theory still stands, and for the same reasons.

The "single publication" theory characterizes multi-state or multitudinous communications of a single libel as one "publication", while the "multiple publications" theory holds each communication to be a "publication". To determine defendant's liability for an injury to reputation arising from "publication" in a different state by applying the substantive law of either plaintiff's home state or that where plaintiff may decide to sue, would violate the general conflicts rule that the law of the place where the last act necessary to produce a cause of action controls concerning the substantive aspects of that cause. "Publication" is that crucial act in libel. Thus, under either "publication" theory, it is completely inconsistent with basic doctrine to argue that the law of one state on the substantive effect of a "publication" in that state controls on that of those in others. The inconsistency exists a fortiori where there is no "publication" in a state whose law those views would apply.

This Court is bound by the Illinois choice of law rule that in a libel suit heard in an Illinois court the state of "publication" of the alleged libel is the place where the cause of action accrues, and its law must be applied to resolve any substantive issue. Illinois law, including Illinois conflicts law, recognizes that but one "publication" occurs, notwithstanding the number of states in which, or third parties to whom, an item is communicated. From this the Court finds that Illinois conflicts law determines the state of "publication" in harmony with the "single publication" principle, and that the choice must be that state which bears the most substantial relationship to all communications to third parties in all states in which communication occurs. It is not necessary here to consider whether or when a subsequent "publication" of a libelous item may be deemed to occur under the "single publication" principle. Those questions were fully argued and decided in Winrod v. Time, Inc., supra.

In view of the provision of Sections 17(1) and 17(3) that submission jurisdiction can be invoked only as to a cause of action which arises from the performance of an enumerated act, and in view of the requirement of Illinois conflicts law that a cause of action for libel of multi-state proportions can arise from communications in Illinois only if Illinois bears the most substantial relation to all communications of the alleged libelous matter, and assuming that the instant Illinois distribution of October 8, 1957, newspapers was "the transaction of any business" or "the commission of a tortious act" within this State, the Court is constrained to hold that no cause of action for libel arose out of such business or act. Illinois is but one of the states into which the alleged libel was distributed. None of the Scripps-Howard corporate defendants has any more contact with Illinois than with any other state in which its newspapers are distributed. Certainly Illinois has substantially less to commend it as the state of "publication" than the states wherein

each defendant publishes, in the literary sense. Illinois is not the state from which the multi-state dispersion proceeds, it is not the state from which the multi-state dispersion is directed, nor is it the state wherein occurs the loss of practical control over dispersion which is characterized by the initiation of movement over the instrumentalities, or due to the inexorable operation of physical laws, in commerce. We do not find it necessary now to decide what state Illinois law would consider to be the state of "publication", or if the claim against each Scripps-Howard corporate defendant arises from a separate "publication".

It has been brought to our attention that acts described in paragraphs (a) and (b) of Section 17(1) have been considered by some to confer jurisdiction upon Illinois courts only when a cause of action arising from the former is *ex contractu* and from the latter *ex delicto*. Such a narrow reading of the statute is not warranted by any language in the statute or any legislative policy to which this Court has been referred. A cause of action traditionally treated as a tort can arise from the transaction of business as easily as one in contract can arise from the ownership, use or possession of realty.

### The Individual Defendants

The Scripps-Howard individual defendants have even fewer contacts with Illinois than their respective corporate relations. Plaintiff has not suggested any independent basis upon which to hold the Scripps-Howard individual defendants subject to Illinois jurisdiction, and the Court is unable to find one. In view of the record and the disposition of the jurisdictional issue concerning the Scripps-Howard corporate defendants, it must be concluded that this Court lacks in personam jurisdiction over the defendant writer and editors.

 Unless defendants Schlesinger and Trombley, in person or by agents, were (a) doing business in Illinois at the time they were served, or (b) transacted any business in Illinois or committed any tortious acts in Illinois from which arose the causes of action pleaded by the plaintiff, this Court cannot sustain service made on them at their respective residences in Massachusetts and Maryland. Plaintiff apparently asserts that they are properly before this Court because they authored the books distributed into Illinois by their publishers. Illinois law does not authorize this Court to assert in personam jurisdiction over a non-resident individual merely because a corporation by which he is employed, with which he contracts or of which he is a stockholder, is itself subject to such jurisdiction. Indeed were Illinois law to be construed otherwise, the Court should have little doubt that it would violate the Constitution. See Schoettle v. Sarkes Tarzian, Inc., D.C.E.D.Pa.1958, 167 F.Supp. 172. It appears that neither individual took part in the sale or distribution of books within Illinois, nor does plaintiff contend that such distribution was effected by the publishers as agents for the authors. Plaintiff argues only that an author is liable for libel to the same extent as his publisher. On motions raising jurisdictional issues, it is not necessary to decide that question. In the present state of the record, the motions of defendants Schlesinger and Trombley to dismiss the action as to them for lack of in personam jurisdiction must be sustained.

### II.

Defendants Trombley and Harper & Brothers insist that because of the Illinois statute of limitations, plaintiff's complaint states no cause of action against them upon which recovery can be had. The relevant section of the Illinois limitations statute reads as follows (Ill.Rev.Stat. (1957), c. 83, § 14):

> "Actions for slander or libel shall be commenced within one year next after the cause of action accrued."

Plaintiff does not contend that the said Illinois statute is inapplicable. His only argument is that the "single publication" rule does not restrict him to a single

cause of action, accruing at the time of distribution, for multiple communications of an allegedly libelous *book*, because the Winrod decision involved only *magazines*. This Court cannot concur in such an unrealistic barrier to the logic of that case.

Under the Illinois "single publications" rule, any cause of action for libel against these defendants accrued in October, 1954, when the book was published and distributed to the general public. Even were the rule not applicable, however, the motion to dismiss on this ground must be granted. Distribution of the book ended in October, 1956, when defendant Harper & Brothers disposed of all unsold copies, more than fourteen months before the complaint was filed.

### III.

Counts 5 and 6 of the complaint allege injuries to plaintiff deriving from the alleged defamation of his father. Paragraph 8 of each count reads: "Each of the foregoing excerpts, *per se* falsely blackened and defamed the memory of plaintiff's father, all to the great damage and injury of plaintiff." To these, respectively, the Schlesinger and Trombley defendants have directed motions to dismiss.

Plaintiff does not appear to contend that the claims so asserted are those of his deceased father. He takes no issue with the proposition that, in the absence of statute, no cause of action for defamation survives the death of the person whose reputation is alleged to have been injured.[16] Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133; Begole v. Ferguson, 299 Mich. 416, 300 N.W. 146; Cullom v. Kadel, 208 Misc. 18, 142 N.Y.S.2d 600; Billingsley v. Townsend, 132 Ohio St. 603, 9 N.E.2d 690; Alles v. Interstate Power Co., 176 Okl. 252, 55 P.2d 751; Turner v. Crime Detective, D.C.N.D.Okl., 34 F.Supp. 8;

Palmisano v. News Syndicate Co., D.C. S.D.N.Y., 130 F.Supp. 17. Plaintiff's contention is that because of the defamation of his father, he has independently sustained injuries for which he ought to be compensated.

In considering the question whether plaintiff has stated a cause of action upon which he might recover, the Court assumes the truth of the allegation that plaintiff's deceased father was libeled by the excerpts set forth in Counts 5 and 6 of the complaint. We further accept as true the allegation that plaintiff was damaged by the said libels of his father. Generally, as we have heretofore said, Illinois choice of law rules refer this Court to the law of the state of publication whenever substantive issues of law in a libel suit must be resolved. Counts 5 and 6 state claims which arise (if they can arise at all) out of libels which were published (if published at all) outside Illinois. The substance of those claims, being thus related to the alleged libels, must themselves be assessed in accordance with the respective laws of the jurisdictions wherein the libels were published.

The affidavits of the parties are at present insufficient on the question of where the respective libels were published, although, as we have heretofore ruled in considering the jurisdictional issue, they are sufficient to show that Illinois was not the place. However, the parties appear to agree that if Illinois law denies plaintiff a remediable cause of action based on the libel of his father, such may be assumed to be the law in any other jurisdiction which might govern the substantive aspects of the cause. Were the authorities less than unanimous, the Court would not decide the matter without supplemental affidavits and argument. But we have been presented with no rational basis upon which to question the decisions to which defendants have referred us and to which our independent research has led.

---

16. See Ill.Rev.Stats. (1957) c. 3, § 494: "In addition to the actions which survive by the common law, the following also survive * * * actions to recover damages for an injury to the person (except slander and libel) * * *."

According to the counts now being considered, libels were directed solely against plaintiff's father. The issue, therefore, is whether libels so directed can, as a matter of law, injure the plaintiff. We hold that they cannot.

■ A cause of action for libel accrues only to the person against whom the injurious publication was directed. Willfred Coal Co. v. Sapp, 1915, 193 Ill. App. 400, 414–415; Life Printing & Pub. Co., Inc. v. Field, 1944, 324 Ill.App. 254, 260–261, 58 N.E.2d 307, 310, appeal denied 326 Ill.App. xv; Life Printing & Pub. Co., Inc. v. Field, 1946, 327 Ill. App. 486, 487–589, 64 N.E.2d 383, 384. The tort of libel is not susceptible of fragmentation, with the wrong done one and the damage done another. That plaintiff may have been affected by the libel of his deceased father does not of itself imply an independent right of action on which he may now sue. See Saucer v. Giroux, 54 Cal.App. 732, 202 P. 887, 888; Bradt v. New Nonpareil Co., 108 Iowa 449, 79 N.W. 122, 45 L.R.A. 681; Hughes v. New England Newspaper Pub. Co., 312 Mass. 178, 43 N.E. 2d 657; Rose v. Daily Mirror, Inc., 284 N.Y. 335, 31 N.E.2d 182, 132 A.L.R. 888; Sorenson v. Balaban, 11 App.Div. 164, 42 N.Y.S. 654, 656–657; Turner v. Crime Detective, D.C.N.D.Okl., 34 F. Supp. 8; Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246, 249–250, 146 A.L.R. 732. See, also, 3 Restatement, Torts, § 560; 1 Harper and James, The Law of Torts 360; Newell, Slander and Libel 368 (4th ed.); Odgers, Libel and Slander 21 (6th ed.); 53 C.J.S. Libel and Slander, §§ 11 and 145; 33 Am.Jur., Libel and Slander, § 7; 146 A.L.R. 739, 740.

■ Plaintiff has not convinced the Court that the theory of libel can be expanded to afford him an independent legal right to a remedy for the libel of another when that libel does not assail his own reputation. The allegation being that only his father's reputation was attacked, we refuse to conclude that plaintiff has a cause of action predicated upon his father's right to remain free of that attack. Cf. Creighton v. Pope County, 1944, 386 Ill. 468, 59 N.E.2d 543, 153 A.L.R. 802. Counts 5 and 6 do not state a cause of action upon which plaintiff may recover.

### IV.

The issue whether the Court should dismiss Counts 2 and 3, on grounds that libelous excerpts there set forth do not name the plaintiff, is quickly disposed of. The Schlesinger and Trombley defendants say that the excerpts refer to plaintiff's deceased father, "Samuel Insull", and not to plaintiff, who they allege is known only as "Samuel Insull, Jr." To support this view, the said defendants have filed affidavits [17] to the effect that plaintiff has referred to himself as "Jr." in directories and official documents. Noticeably absent from those affidavits, however, are averments requiring the conclusion that plaintiff has never been known, or could not be known, as "Samuel Insull".

■ It is our opinion that plaintiff is correct in contending that "Whether the libelous passages in those counts were written concerning the plaintiff is a question of fact for the jury." The issue whether readers of those excerpts did and could reasonably understand them to refer to the plaintiff cannot be resolved by this Court as a matter of law. John. v. Tribune Co., 1958, 19 Ill.App.2d 547, 154 N.E.2d 862; Ogren v. Rockford Star Printing Co., 1919, 288 Ill. 405, 123 N.E. 587; Ball v. Evening American Pub. Co., 1909, 237 Ill. 592, 86 N.E. 1097.

### V.

The Schlesinger defendants have moved pursuant to Rule 20 F.R.Civ.P., 28 U.S.C.A., to sever Counts 2 and 5 from the complaint and proceed with them independently. In so far as our resolution of the issues on the respective motions to dismiss leaves only Houghton Mifflin Company, a Schlesinger defend-

---

17. The affidavits of the Schlesinger defendants on this point have been adopted by reference by the Trombley defendants.

ant, before the Court, there can no longer be much merit to their contention. But we have nevertheless considered it.

■ Plaintiff's claims against the Schlesinger defendants do not arise out of "the same transaction, occurrence, or series of transactions or occurrences" as those asserted against the Trombley or Scripps-Howard defendants. There is no allegation that the alleged libels were published other than independently by the respective sets of defendants. There may well be a "question of law or fact common to all of them", but this latter, rather than being an alternative test for joinder, is a factor which must also exist in order that claims which arise out of the "same" transaction may be properly joined under Section (a) of Rule 20. Therefore, pursuant to Rule 21, the Court concludes that on the pleadings the claims asserted against the Schlesinger defendants should be "severed and proceeded with separately" from claims asserted against other defendants by this complaint.

### ORDER

The Court, having examined the complaint, and having examined and considered the briefs and memoranda filed by all parties in support of their respective contentions, and having heard and considered the arguments of counsel for the respective parties, it is now ordered that defendants' motions be, and the same are hereby, adjudged in conformity with this opinion, and that:

(1) The motion of the Scripps-Howard defendants to dismiss the cause as to them for lack of jurisdiction over their respective persons is granted;

(2) The motion of defendant Schlesinger and defendant Houghton Mifflin Company to sever Counts 2 and 5 of the complaint is granted;

(3) The motion of defendant Schlesinger and defendant Houghton Mifflin Company to dismiss Count 2 of the complaint on the ground that the alleged libelous excerpt there set forth could not be understood to refer to plaintiff, is denied;

(4) The motion of defendant Schlesinger to dismiss the action as to him and to quash the return of summons as to him for lack of jurisdiction over his person is granted;

(5) The motion of defendant Schlesinger and defendant Houghton Mifflin Company to dismiss Count 5 of the complaint, on the ground that it does not state a cause of action upon which plaintiff may recover, is granted;

(6) The motion of defendant Trombley and defendant Harper & Brothers to dismiss Count 3 of the complaint, on the ground that the alleged libelous excerpt there set forth could not be understood to refer to plaintiff, is denied;

(7) The motion of defendant Trombley to dismiss the action as to him and to quash the return of service as to him, for lack of jurisdiction over his person, is granted;

(8) The motion of defendant Harper & Brothers to dismiss the action as to it and to quash the return of summons as to it for lack of jurisdiction over its person, is denied;

(9) The motion of defendant Trombley and defendant Harper & Brothers to dismiss Count 6 of the complaint, on the ground that it does not state a cause of action upon which plaintiff may recover, is granted;

(10) The motion of defendant Trombley and defendant Harper & Brothers to dismiss Counts 3 and 6 of the complaint, on the grounds of the bar of the Illinois statute of limitations, is granted;

(11) The motion of defendant Trombley and defendant Harper & Brothers for summary judgment under Rule 56, F.R.Civ.P., 28 U.S.C.A., is denied for failure to show the absence of a genuine issue as to any material fact necessary to a judgment on the merits and that said defendants are entitled to judgment as a matter of law.